**James W. MORGAN, Jr., Petitioner,**

v.

**DEPARTMENT OF The ARMY, Respondent.**

**No. 91–3091.**

United States Court of Appeals, Federal Circuit.

May 22, 1991.

James W. Morgan, Jr., pro se.

Kathryn A. Bleecker, Dept. of Justice, Washington, D.C., submitted for respondent. Of counsel were David M. Cohen and James M. Kinsella.

Before NEWMAN, MICHEL and RADER, Circuit Judges.

PER CURIAM.

James W. Morgan, Jr. appeals his removal from service as a Supervisory Police Officer at the Walter Reed Army Medical Center. Merit Systems Protection Board Docket No. DC07529010221, 46 M.S.P.R. 283. We affirm the Board's decision sustaining the removal.

### Discussion

In the summer of 1989 it was rumored among certain security police officers that Captain Charles Holland of the Walter Reed Army Medical Center security police had a criminal record. Officers Martha Brown and Brett Meyers asked a friend of Officer Brown at Andrews Air Force Base, who had computer-coded access to the data bank of the National Crime Information Center (NCIC), to check Captain Holland's record. The check was done, and showed that a person named Charles Holland had a record of arrests and convictions. The computer operator at Andrews pointed out that without Captain Holland's middle name and social security number, the identity was not clearly established.

A short time thereafter Mr. Morgan gave Brown a piece of paper on which was written Captain Holland's middle name. Morgan denied that he also provided Holland's social security number and, as discussed *infra*, the Board held that provision of the social security number had not been proved. Morgan testified that he provided the middle name without knowing or asking why Brown wanted it. He stated that it was not unusual to provide such information about fellow officers, for use in completing routine police reports. The Board credited the statement of Brown[1] and the testimony of other witnesses, and found that Morgan knew that this information was wanted for an unauthorized check of Captain Holland's records in connection with the rumors about Holland.

Officer Meyers had independently obtained Holland's middle name and social security number from Officer John D. Ford. A second unauthorized check of the data bank was made by the Andrews Air Force Base operator at the request of Brown and Meyers. This check showed that the Charles Holland with the criminal record was a different person. Management officials duly learned of these events and all involved were disciplined to varying degrees.

Mr. Morgan was removed from service, the agency charging him with abusing his position by conspiring with subordinate officers to gain information unlawfully with the intent of ruining the reputation of a management official; disclosing information protected by the Privacy Act, 5 U.S.C. § 552a *et seq.*;[2] and dereliction of duty. The Board sustained the charges of abuse of position and dereliction of duty. With respect to the Privacy Act, the Board found that Mr. Morgan revealed only Captain Holland's middle name, but not his social security number, and therefore had not revealed any information "from a system of

---

1. Ex-officer Brown did not testify at the hearing. However, the investigator Sparacino testified that his report accurately reflected statements she (and others) had made to him. While hearsay testimony is admissible in Board proceedings, it is given weight appropriate to its source. *See Sanders v. United States Postal Service,* 801 F.2d 1328, 1331 (Fed.Cir.1986).

2. 5 U.S.C. § 552a(b)
   No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless [12 exceptions listed]....

records" as defined at 5 U.S.C. § 552a(a)(5).[3]

■ Witnesses who testified at the Board hearing included Morgan, Meyers, Ford, the investigator Sparacino, and Officer Gregory Jordan. Mr. Morgan admitted that he provided Brown with Holland's middle name, and Jordan testified that he witnessed the transfer of the piece of paper. Mr. Morgan also admitted to having heard the rumors about Captain Holland from Officer Ford, and testified that Ford had told him that he (Ford) had run an NCIC check on Holland. Brown told the investigator that she told Morgan she had run an NCIC check on Holland; whereas Morgan denied that he knew why Brown wanted Holland's middle name. These conflicts in testimony raise questions of credibility. The appellate court accords due deference to the opportunity of the administrative judge to hear and observe the witnesses. Findings that turn on credibility are upheld unless the quality and weight of the evidence are such that no reasonable trier of fact could have, on the evidence adduced, reached the conclusion that was reached by the administrative judge or the Board. *See Kumferman v. Department of Navy*, 785 F.2d 286, 290 (Fed.Cir.1986). The Board's finding that Mr. Morgan was aware of the unauthorized actions of his subordinates when he provided Holland's middle name, and provided information to facilitate these actions, must be upheld, for it was supported by a combination of testimonial evidence and admissions. *See* 5 U.S.C. § 7703(c).

■ The Board found that Mr. Morgan was derelict in his duty by participating in and failing to control or report the improper actions of his subordinates. His involvement was more than that of a bystander. As a supervisory police officer Mr. Morgan was responsible both to uphold the law and to maintain appropriate standards of performance and integrity among his subordinates. *Brewer v. United States Postal Service*, 647 F.2d 1093, 1098, 227 Ct.Cl. 276 (1981), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982).

Mr. Morgan argues that at most he was guilty of bad judgment, and that the penalty of removal is overly severe, particularly in light of his seventeen years of exemplary service. He asks the court to consider that rumors were always rife, and that for him to have taken rumors about Captain Holland to his management would have been to perpetuate them, not control them. He states that other direct participants were allowed to retire, that Meyers made a lateral shift, and that he, Morgan, was the only person who was "fired". Of this group, Morgan appears to have been the only supervisor.

The Board adjudged the penalty of removal reasonable in view of the testimony of Lieutenant Colonel Yalicki, the Provost Marshall of Walter Reed, that misuse of the NCIC was a very serious matter,[4] that it could result in the NCIC privileges of the Walter Reed security police being revoked, and that as a result of the incident he had lost confidence in Morgan.

■ We will not change an agency's determination of the penalty for employee misconduct unless the severity is plainly disproportionate and unreasonable. *Hagmeyer v. Department of Treasury*, 757 F.2d 1281, 1284 (Fed.Cir.1985). We agree with the Board that the agency had the right to expect that Mr. Morgan, as a supervisory police officer, would meet a high

---

**3.** 5 U.S.C. § 552a(a)

    (5) the term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

**4.** In enacting the Privacy Act, Congress stated *inter alia* that:

    (2) the increasing use of computers and sophisticated information technology, while essential to the efficient operations of the Government, has greatly magnified the harm to individual privacy that can occur from any collection, maintenance, use or dissemination of personal information;

    (3) the opportunities for an individual to secure employment, insurance, and credit, and his right to due process, and other legal protections are endangered by the misuse of certain information systems.

Pub.L. 93–579, 88 Stat. 1896, § 2 (1974).

standard of conduct. In view of the seriousness of the illegal use of the NCIC with Morgan's knowledge and assistance, and in view of Morgan's position of responsibility as a police officer and as a supervisor, we conclude that the penalty of removal did not exceed the agency's discretionary authority as to choice of penalty. *See Brewer, supra,* 647 F.2d at 1098 (supervisory employee's removal affirmed despite 27 years of service).

The decision is

AFFIRMED.