47 F.3d 1182
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
John M. GAMBOA, Petitioner,
v.
DEPARTMENT OF the TREASURY, Respondent.
 No. 94-3129.
 United States Court of Appeals, Federal Circuit.
 Jan. 13, 1995.
Rehearing Denied April 14, 1995.
 
 EEOC
 REVERSED.
 Before NEWMAN, MAYER, and PLAGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a sexual harassment case. On December 23, 1992, the Department of the Treasury's Bureau of Alcohol, Tobacco, and Firearms (Agency) proposed removing John M. Gamboa from his position as a GM-1811-14 Supervisory Criminal Investigator. The Agency charged Gamboa with sexual harassment as defined by Equal Employment Opportunity Commission (EEOC) Guidelines, 29 C.F.R. Sec. 1604.11(a) (1992), a violation of both regulation and statute.[1] The Agency's charge was based on 21 specifications of misconduct toward fellow employee Sandra Hernandez over a period of almost 2 1/2 years, beginning on March 4, 1990, the very day on which Hernandez was offered a job with the Agency, and extending until October 1992.
 
 
 2
 The Agency gave Gamboa the procedure afforded him by statute. See 5 U.S.C. Sec. 7513(b) (1988). Gamboa denied each specification of the charge. The Agency nonetheless decided to remove Gamboa effective March 30, 1993. Gamboa appealed to the Merit Systems Protection Board (MSPB or Board). The Administrative Judge (AJ) in a lengthy decision upheld the Agency, Gamboa v. Department of the Treasury, Dkt. No. CH-0752-93-0348-I-1 (MSPB Oct. 25, 1993) (Decision). Because Gamboa did not petition for rehearing by the Board, and the Board did not reopen the case on its own motion, the initial decision became the final decision on November 29, 1993. Gamboa has timely appealed to this court. We reverse.
 
 A.
 
 3
 The Board will sustain an agency decision to remove an employee, such as Gamboa, from a protected position in the competitive service only if the decision is supported by a preponderance of the evidence. 5 U.S.C. Sec. 7701(c)(1)(B) (1988).[2] The Board's decision may be appealed to this court. On appeal here, the Board's decision is upheld if the factual determinations are supported by substantial evidence in the record, and if the decision is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. Sec. 7703(c) (1988). See Jacobs v. Department of Justice, 35 F.3d 1543 (Fed. Cir. 1994); Dixon v. Department of Transp., 8 F.3d 798 (Fed. Cir. 1993).
 
 
 4
 Appellate courts do not determine credibility, nor do they reweigh evidence. In reviewing the MSPB under the substantial evidence standard of review, we must affirm a decision that is "supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted). See also Jacobs, 35 F.3d at 1546; Dixon, 8 F.3d at 804. At the same time, we are not free simply to view one side of the argument. As the Supreme Court has admonished, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). Accord Jacobs, 35 F.3d at 1546-47 (relying on Universal Camera); Dixon, 8 F.3d at 804 (same); Spurlock v. Department of Justice, 894 F.2d 1328, 1330 (Fed. Cir. 1990) (same).
 
 
 5
 As Universal Camera and its progeny make clear, whether evidence is substantial is not an abstract question but a contextual one. This is particularly true of sexual harassment cases, in which the substantive law requires an inquiry into the context of the allegations. Harris v. Forklift Sys., Inc., 114 S.Ct. 367, 371 (1993); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). "In determining whether alleged conduct constitutes sexual harassment, the Commission [the EEOC] will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." 29 C.F.R. Sec. 1604.11(b) (1994).
 
 
 6
 The jurisprudence concerning sexual harassment has been developed largely through cases brought by plaintiffs under Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. Sec. 2000e et seq. In contrast, this case, like most personnel cases before this court, is brought in a defensive posture: a government employee appeals an adverse agency action based on the agency's determination that the employee acted in violation of statute or regulation. It is well-established that sexual harassment, as defined by 29 C.F.R. Sec. 1604.11(a) (1994), entails the jurisprudence developed under Title VII. Meritor, 477 U.S. at 65; King v. Hillen, 21 F.3d 1572, 1579-80 (Fed. Cir. 1994); Carosella v. United States Postal Serv., 816 F.2d 638, 640 (Fed. Cir. 1987).
 
 
 7
 Given the nature of the offense, it is often the case that sexual harassment is unwitnessed, and no good evidence exists to support the word of one party over the other. When fresh complaint is made, the absence of either physical corroboration or witnesses is not hard to understand. When a long-standing pattern of conduct is alleged, however, and corroborating evidence is weak or non-existent, then the circumstances of the allegations must bulk large in the consideration of the adjudicator.
 
 
 8
 For these reasons, and with due regard to the standard of review mandated by Congress, this court is careful to consider the context in which harassment is alleged to have occurred. See, e.g., King, 21 F.3d 1572; Grubka v. Department of the Treasury, 858 F.2d 1570 (Fed. Cir. 1989); Carosella, 816 F.2d 638; Downes v. Federal Aviation Admin., 775 F.2d 288 (Fed. Cir. 1985), disapproved on other grounds, Harris, 114 S. Ct. at 370-71; Jackson v. Veterans Admin., 768 F.2d 1325 (Fed. Cir. 1985).
 
 B.
 
 9
 Hernandez's complaint, based as it is on a long-standing course of conduct, might be expected to stand on clear-cut allegations of misbehavior. Instead, those specifications that depend on testimony other than that of complainant Hernandez and Diane Klipfel, who was supervisor of Hernandez and Gamboa during much of the time in question, tend to be ambiguous and equivocal. Specifications 1 and 5 illustrate the point. Specification 1 states:
 
 
 10
 The appellant repeatedly asked SA Hernandez to take a weekend trip with him to Michigan, where the appellant and his friend, Jeff Wahl, had a boat. When SA Hernandez questioned the appellant about accommodations on the boat, the appellant told SA Hernandez that the trip would be just like working: the two of them would sleep in the same cabin, pretending to have an affair.[3]
 
 
 11
 Decision at 4. Gamboa denied that he had asked Hernandez to spend a weekend together with him on a boat. In sustaining the specification, the AJ relied on hearsay testimony from David Fermaint, Robert Miller, and Klipfel, each of whom testified that Hernandez had told them of Gamboa's invitation shortly after it was made -- each of these witnesses testified that Hernandez thought Gamboa "was going to set up a situation where they would go on the boat and [Wahl] would take pictures." Id. at 6 (referring specifically to Miller's testimony); see also id. at 15 (discussing the invitation as an occasion "during which [Hernandez] could have pictures taken for modeling purposes.").
 
 Specification 5 states:
 
 12
 The appellant obtained copies of pictures of SA Hernandez and other female agents on assignment dressed as prostitutes. The appellant told SA Hernandez that he had showed a picture of her in the "hooker" outfit to Mr. Wahl and, after seeing the picture, Mr. Wahl expressed an interest in helping SA Hernandez obtain modeling contracts.
 
 
 13
 Id. at 18. Gamboa also denied specification 5. The AJ found that Hernandez and Wahl were acquainted, and that Hernandez had visited Wahl to discuss modeling.[4] The AJ found that the facts alleged in the specification occurred, but noted that
 
 
 14
 the specification does not allege any conduct that is sexual in nature. SA Hernandez admitted she was interested in modeling and she pursued the matter with Mr. Wahl. It appears, therefore, that the appellant's actions were not unwelcome by SA Hernandez. Because this specification could not, therefore, support an allegation of sexual harassment, it is not considered further.
 
 
 15
 Id. at 21 (emphasis supplied). The AJ treated arrangements to model both as harassment of Hernandez (specification 1) and as welcomed by Hernandez (specification 5). Either Hernandez wanted to model or she did not. Either possibility is plausible, but the possibilities are mutually exclusive.
 
 Specification 8 states:
 
 16
 In March of 1992, the appellant behaved in a manner that would lead one to believe that he was attempting to "set" SA Hernandez up with a male friend of his. The appellant told SA Hernandez that John Boyle wanted to meet her because he was a very close friend of ASAC Adamcik. Mr. Boyle and the appellant picked up SA Hernandez and took her to lunch at a Mexican restaurant. After SA Hernandez returned to the office, Mr. Boyle called her to ask for a date. When SA Hernandez refused, Mr. Boyle told her that if she dated him and had sex with him, he would make sure that ASAC Adamcik promoted her to grade 13.
 
 
 17
 Id. at 23. The AJ refused to hold Gamboa responsible for Boyle's behavior. Id. Nonetheless, on the basis of Klipfel's and Fermaint's hearsay testimony that Hernandez told them that Gamboa was pressuring her to date Boyle, the AJ sustained the part of the specification relating to Gamboa's conduct. Id. at 24. We question whether the specification as sustained -- that Gamboa went to lunch with Hernandez and Boyle, in the interest of sparking a romance between Hernandez and Boyle -- meets the objective standard for sexual harassment set forth in Harris, 114 S.Ct. at 370 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview."). See also King, 21 F.3d at 1582 (discussing the objective and subjective elements of analysis in sexual harassment cases).
 
 C.
 
 18
 The Agency's case is almost totally dependent on the testimony of complainant Hernandez and Klipfel (the supervisor of both Hernandez and Gamboa for much of the time in question).[5] Although, as noted above, sexual harassment often goes unwitnessed due to the circumstances of its commission, those circumstances do not prevent harassment from being reported to proper authorities. The AJ paid strikingly little attention to the duration of Hernandez's failure to complain about Gamboa's harassment, which silence extended from March 1990 to October 1992. The record indicates that Hernandez did not even mention the problem to her closest friends:
 
 
 19
 SA's Jolley and Ragusa worked with SA Hernandez in Group III and testified that they and another female agent ate lunch with SA Hernandez almost every day, during which they discussed "everything" four women discuss, including problems with boyfriends, sex, and weddings. Each testified that SA Hernandez never spoke negatively about the appellant, nor did she indicate to them that the appellant was sexually harassing her. Each believes that if it occurred, SA Hernandez would have told them.
 
 Decision at 10. The AJ responded:
 
 20
 I find no basis for discrediting SA Hernandez's testimony because she never mentioned the appellant's conduct to these women. The mere fact that SA Hernandez chose not to share this particular problem, concerning a mutual co-worker, with them does not indicate that the problem did not exist.
 
 
 21
 Id. at 11.
 
 
 22
 In August of 1992, Hernandez was hospitalized and diagnosed with severe depression and anorexia nervosa. Questioned by her doctors, she again did not mention Gamboa's harassment. Instead, she complained of difficulties with a former boyfriend. Only later were her psychological problems ascribed to Gamboa. Again, the AJ found no shadow cast upon Hernandez's testimony. Id. at 12-13.
 
 
 23
 Klipfel's testimony is even more problematic. Klipfel's testimony about what transpired between Hernandez and Gamboa is -- with one exception -- hearsay. While hearsay is admissible in administrative proceedings, it should be "given weight appropriate to its source." Morgan v. Department of the Army, 934 F.2d 310, 311 n.1 (Fed. Cir. 1991) (citation omitted).
 
 
 24
 Klipfel did witness the events recounted in specification 13, which states:
 
 
 25
 During May of 1991, the appellant was in Group Supervisor Klipfel's office when SA Hernandez came in to discuss a case. When SA Hernandez walked into the office, appellant went to her and kissed her on the lips. After SA Hernandez sat down, the appellant stood behind her and rubbed his pelvic area against her back.
 
 
 26
 Decision at 26. Klipfel testified that she did not say anything at the time.[6] Klipfel told the AJ that Hernandez did not want to charge Gamboa because she was still a probationary employee who could be dismissed without the protections afforded by the Civil Service Reform Act of 1978, Pub. L. 95-454, 92 Stat. 1111 (1978).[7] The AJ accepted this argument. Decision at 12.
 
 
 27
 Klipfel was supervisor of both Hernandez and Gamboa. Her responsibility was to prevent harassment -- preserve discipline in her office -- whatever Hernandez might have wanted. Employers and hence supervisors are responsible for hostile or abusive work environments. See Harris, 114 S.Ct. at 370-71 (condemning disparate treatment of women with respect to the conditions of employment); Carosella, 816 F.2d at 643; Jackson, 768 F.2d at 1332-33 ("As a supervisor, Mr. Jackson was responsible for the environment of the workplace, and clearly he did not live up to those responsibilities."). If, as is generally presumed, officials correctly perform the duties incumbent upon them, Klipfel's inaction is difficult to reconcile with her testimony several years later that demonstrates that action was needed.
 
 
 28
 Gamboa's sexual harassment of Hernandez is alleged to have occurred over 2 1/2 years, that is, long after Hernandez became a protected employee. Even if Hernandez's cooperation was necessary to bring formal disciplinary proceedings against Gamboa, this does not justify what appears to be Klipfel's complete contemporaneous acquiescence in behavior that, it is now claimed, was harassment.
 
 
 29
 To further complicate matters, Gamboa has alleged that Klipfel's testimony was biased against him. Prior to the bringing of charges against Gamboa, Klipfel was suspended for 7 days for misconduct and transferred to another position. Gamboa, Klipfel's subordinate, played a role in the investigation which culminated in Klipfel's suspension and transfer. Gamboa subsequently was appointed to the position vacated by Klipfel. See Decision at 8.[8]
 
 
 30
 The AJ did not find this supportive of Gamboa's allegation that Klipfel was biased against him:
 
 
 31
 I find no reason to ascribe to SA Klipfel a motive of reprisal against the appellant based on these circumstances, and then to believe that this would cause her to provide false testimony in this appeal. The appellant offered no evidence or argument to show that SA Klipfel had reason to believe he engineered her transfer for his own personal gain.
 
 
 32
 Id. Elsewhere, however, the AJ did use complaints regarding job performance to establish a presumption of bias and hence a lack of credibility. With regard to three of Gamboa's witnesses, the AJ found the following:
 
 
 33
 The appellant presented three witnesses, SA Laurie Jolley, SA Elizabeth Ragusa, and Chicago Police Officer Joseph Miedzianowski, each of whom worked under SA Klipfel's supervision or direction and each of whom testified that they would not believe anything SA Klipfel said under oath. Each of these three witnesses has an obvious bias, however. SA Klipfel reported allegations of misconduct on the part of each, prior to their reporting allegations that she engaged in misconduct. Consequently, I discount their opinions of SA Klipfel's truthfulness.
 
 
 34
 Id. at 7.
 
 
 35
 Similarly, Gamboa was the Equal Employment Opportunity (EEO) Counselor for an employee who filed an EEO complaint against Klipfel's husband. Once again, the AJ did not find that this impugned the objectivity of Klipfel's testimony.
 
 
 36
 Without evidence that Klipfel or her husband exhibited specific and unwarranted objections to the manner in which the appellant fulfilled his EEO Counselor responsibilities in the referenced case, the appellant's mere role as the counselor provides an insufficient basis upon which bias on Klipfel's part may be presumed.
 
 
 37
 Id. at 9.
 
 
 38
 Regarding Gamboa's witnesses, however, the AJ was willing to let "mere role" or other vague aspersion give rise to a presumption of bias. Sustained specification 16 states:
 
 
 39
 On November 10, 1990, the appellant and SA Hernandez attended another employee's wedding; the appellant with his wife and SA Hernandez with her fiance. At the wedding, the appellant told SA Hernandez to not let his wife see her dressed as she was; asked SA Hernandez if she wore garter belts; and attempted to touch SA Hernandez on her side and back.
 
 
 40
 Id. at 30. Hernandez and Klipfel testified in support of the specification. Gamboa, his wife, fellow Agency employee Ragusa, and the bride, fellow employee Jolley, testified that the specification was untrue. The AJ does not discuss Gamboa's testimony. The AJ summarily concluded that Mrs. Gamboa was biased, id. at 31-32; Ragusa testified to a different seating chart than the other witnesses, and was therefore not credible, id. at 31; Jolley, the bride, was understandably distracted by her nuptials, and therefore not credible, id. Thus the AJ sustained specification 16.
 
 D.
 
 41
 There is another problem, a problem that goes to the heart of whether Gamboa received a fair hearing before an unbiased adjudicator. At her deposition, taken well before the hearing in front of the AJ, a prospective witness, Annette Harden, was asked if Hernandez made statements to her about Gamboa's harassing activity. Harden answered no. However, at the hearing Harden testified that she recalled Hernandez complaining that Gamboa had been hugging, grabbing, or kissing her. Questioned about the discrepancy between her testimony at the deposition and at the hearing, Harden conceded that Hernandez had called her both after her deposition and the night before the hearing to remind her of their prior conversations. Id. at 11.[9]
 
 
 42
 Hernandez is a federal law enforcement agent. Her position requires her to appear in court; we presume she knows at least the rudiments of appropriate conduct for witnesses. Yet regarding this flagrant impropriety, the AJ merely noted that Harden's memory had been "refreshed by her conversations with SA Hernandez after her deposition and on the eve of trial." Id. In response to several motions from Gamboa's counsel at the hearing, the AJ refused to exclude Harden's testimony. The AJ ordered the Agency to instruct Hernandez that she was not supposed to talk to witnesses, but also said "I am not ordering Ms. Hernandez to do anything."[10] In the initial opinion, the AJ stated that she did not rely on Harden's testimony to support the specifications, but expressly declined "to find that SA Hernandez's attempts to refresh witness Harden's recollections concerning this matter are themselves a basis upon which Hernandez's own credibility can be impeached." Id. at 11.
 
 
 43
 Again, virtually all of the testimony on which these specifications were sustained is hearsay about prior conversations in which Hernandez allegedly reported on Gamboa's harassment. Hearsay evidence -- in which a witness testifies to the fact of speech, and the veracity of the speech is implied -- is doubly unreliable if the text of the speech is provided after the fact by an interested party. The AJ's cavalier attitude toward Hernandez's communication powerfully suggests an adjudicator whose conclusions were foregone.
 
 E.
 
 44
 We need not discuss the considerable evidence brought forth in favor of Gamboa's position, even though substantial evidence review includes assessment of evidence contrary to, as well as in support of, the decision on review. Universal Camera, 340 U.S. at 488. It suffices to say that the AJ's decision and the record presented to this court simply leave us with too many questions regarding the Agency's case in chief. Other than Hernandez's, the only first-hand testimony that goes directly to the allegations of misconduct, over the entire two and a half years, came from Klipfel who, despite her responsibility as supervisor of both Gamboa and Hernandez, remained totally silent despite allegedly witnessing one event and being told of numerous others. Klipfel gave no warning to Gamboa, and issued no adverse report.
 
 
 45
 On the entire record of this case, there is a striking lack of evidence upon which a fact-finder could rely. Accordingly, we conclude that there is not substantial evidence in the record in support of the Board's decision, and it must be
 
 
 46
 REVERSED.
 
 
 
 [1]
 The regulation provides:
 (a) Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.
 
 
 [29]
 C.F.R. Sec. 1604.11(a) (referring to Title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 253 (1964), codified as amended at 42 U.S.C. 2000e et seq. (1988 & Supp. V 1993)) (footnote omitted)
 
 
 [2]
 There is an exception. The Board will sustain an agency decision to take an action based on unacceptable performance if the agency decision is supported by substantial evidence. 5 U.S.C. Sec. 7701(c)(1)(A) (Supp. V 1993)
 
 
 [3]
 The reference to "working" is to working undercover, which might require two agents to pose as lovers. See Decision at 4-5
 
 
 [4]
 The AJ found:
 Additionally, both SA Hernandez and Mr. Wahl testified that they first spoke by telephone and she then went to see him at his business. SA Hernandez testified that they spoke once by telephone, discussed modeling, and that Mr. Wahl stated he could do nothing for her until he saw her, so she went to see him.
 * * *
 Consequently, I find that it is more likely true than not that SA Hernandez visited Mr. Wahl's business because, as she testified, he stated that he could not assist her in a modeling career unless he saw her first.
 Id. at 19-20.
 
 
 [5]
 See, e.g., specification 14, Decision at 28, Hernandez stated that Gamboa attempted to kiss Hernandez in the elevator on or about March 4, 1990; specification 15, id. at 29, same, in a car on or about June 5, 1990; specification 21, id. at 35, same, in a file room. Specification 21 was supported by affidavits of two persons, but again dependent solely on Hernandez's reporting of the events
 
 
 [6]
 "In fact, the record demonstrates that even though she was aware of the appellant's conduct for almost two years, SA Klipfel said nothing, at the request of SA Hernandez." Decision at 41
 
 
 [7]
 Klipfel testified that she removed Hernandez from Gamboa's presence by transferring Hernandez. Searching through the record, we have found no corroboration for the proposition that Hernandez's transfer was motivated by Klipfel's concern about Gamboa's harassment
 
 
 [8]
 The same facts form the substance of Gamboa's affirmative defense under the Whistleblower Protection Act, 5 U.S.C. 2302(b)(8) (1988 & Supp. V 1993), which we do not consider. See Decision at 39-42
 
 
 [9]
 Hernandez also called Robert Miller, a witness on her behalf, shortly before he was deposed. As Miller had provided no prior testimony, it is impossible to determine what effect, if any, Hernandez's communication had
 
 
 [10]
 During the colloquy regarding the conversations between Hernandez and Harden, the AJ asked the Agency's counsel, "Counsel, does Ms. Hernandez know she is not supposed to talk to any witnesses in this case?" Government counsel answered that she thought she (Hernandez) did. It is unclear from the record whether there had been an express order, previously issued by the AJ, or whether this was based on established practice by government law enforcement agents, which Hernandez was. Petitioner in his brief indicated there was "an order excluding witnesses."