NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**PHILLIP SPYROPOULOS,**
*Petitioner*

**v.**

**SOCIAL SECURITY ADMINISTRATION,**
*Respondent*

———————————

2024-1987

———————————

Petition for review of the Merit Systems Protection Board in No. NY-0752-17-0121-I-1.

———————————

Decided:  September 25, 2025

———————————

PHILLIP SPYROPOULOS, Keansburg, NJ, pro se.

DANIEL BERTONI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

———————————

Before DYK, CUNNINGHAM, *Circuit Judges*, and HALL, *District Judge*.[1]

PER CURIAM.

Philip Spyropoulos petitions pro se for review of a final order of the Merit Systems and Protection Board ("Board"), denying the petition for review but affirming in part and vacating in part an initial decision which sustained Mr. Spyropoulos's removal from employment at the Social Security Administration ("SSA"). *See Spyropoulos v. Soc. Sec. Admin.*, No. NY-0752-17-0121-I-1, (M.S.P.B. Apr. 17, 2024) (S. App'x 1–22) ("*Final Order*"); *Spyropoulos v. Soc. Sec. Admin.*, No. NY-0752-17-0121-I-1, (M.S.P.B. Feb. 9, 2018) (S. App'x 23–72) ("*Initial Decision*").[2]  We *affirm*.

## I.    BACKGROUND

Mr. Spyropoulos was a GS-905-12 Attorney Advisor with the SSA's Office of Disability, Adjudication, and Review in Newark, New Jersey for nearly eighteen years. *Final Order* at 2; *Initial Decision* at 1–2; S. App'x 77.  As an attorney advisor, Mr. Spyropoulos reviewed medical and confidential records of claimants for Social Security disability benefits, and he drafted disability decisions for SSA administrative law judges. *Initial Decision* at 2; S. App'x 78–82.  On March 20, 2017, Mr. Spyropoulos was removed from his position for failure to safeguard Personally Identifiable Information ("PII"), lack of candor, and

---

[1]    Honorable Jennifer L. Hall, District Judge, United States District Court for the District of Delaware, sitting by designation.

[2]    S. App'x refers to the corrected supplemental appendix, ECF No. 38, filed by the Respondent.  Citations in this opinion are to the version included in the government's supplemental appendix.  For example, *Final Order* at 1 is found at S. App'x 1, and *Initial Decision* at 1 is found at S. App'x 23.

misuse of both his position and government property. *Final Order* at 2–3; *Initial Decision* at 5; S. App'x 129–38.

During his employment, Mr. Spyropoulos used his personal laptop computer to draft portions of disability decisions via speech-to-text software and then sent this information to his work email. *Initial Decision* at 2; S. App'x 115–16. When notified that his practice violated SSA's PII policy, Mr. Spyropoulos insisted that his emails did not contain PII, and he had "never included PII in any emails, on [his] personal laptop or in any other electronic communications outside of [his] work-issued laptop." *Initial Decision* at 3 (quoting S. App'x 107); S App'x 110–12.

On May 18, 2015, the SSA terminated Mr. Spyropoulos's telework privileges on the ground that he no longer met the program's eligibility requirements, citing his alleged failure to use approved appropriate technology. *Initial Decision* at 4; S. App'x 113–14. Shortly thereafter, the SSA further investigated Mr. Spyropoulos's use of his personal email account. Mr. Spyropoulos stated that he would typically send no more than four emails per week between his personal email account and his work account and denied sending other work-related materials between his work account and any other email account. *Initial Decision* at 4; S. App'x 116.

Ultimately, on October 27, 2016, the agency issued Mr. Spyropoulos a notice of proposed removal, asserting four charges. *Final Order* at 2; *Initial Decision* at 5; S. App'x 117–21. The first charge, failure to safeguard PII, was based on 32 specifications or separate instances of emails sent to or from Mr. Spyropoulos's work email account outside of the agency that allegedly contained PII. *Initial Decision* at 6–9; S. App'x 117–20. The second charge, lack of candor, consisted of four specifications predicated upon Mr. Spyropoulos's several denials of having sent PII between his personal, work, and any other email accounts. *Final Order* at 7–8; *Initial Decision* at 14–15;

S. App'x 120–21.  The third charge, misuse of position, indicated that Mr. Spyropoulos revealed non-public information about how to successfully prosecute disability claims before the agency to a third-party attorney in exchange for that attorney's assistance with Mr. Spyropoulos's application for a position in family court.  *Initial Decision* at 19–22; S. App'x 121.  The fourth charge, misuse of government property, involved two instances where Mr. Spyropoulos allegedly sent email attaching either a confidentiality agreement or a material transfer agreement[3] from his work email account to an outside email account.  *Initial Decision* at 22; S. App'x 121–22.

On March 20, 2017, the deciding officer at the SSA, Ms. Lynn Shellhamer, formally notified Mr. Spyropoulos of her decision to remove him from federal service.  *Initial Decision* at 5; S. App'x 129.  Mr. Spyropoulos appealed his removal to the Board.  *Initial Decision* at 1.  The administrative judge sustained 29 of the 32 specifications supporting the first charge against Mr. Spyropoulos for his failure to safeguard PII.  *Initial Decision* at 13–14.  The administrative judge next sustained the lack of candor charge and all its underlying specifications.  *Initial Decision* at 17–19.  The administrative judge likewise sustained the charge of misuse of Mr. Spyropoulos's position, finding that he sought to leverage nonpublic information learned in the course of his employment in exchange for assistance from a third-party on his application for family-court work.  *Initial Decision* at 19–22.  Fourth, the administrative judge sustained the charge of misuse of government property based on finding that Mr. Spyropoulos sent emails from his

---

[3]    The confidentiality agreement and the material transfer agreement are between people or entities related to the University of Virginia and Biker Entourage, LLC, a company where Mr. Spyropoulos is identified as the managing member.  *Initial Decision* at 22.

work account to "further his personal business." *Initial Decision* at 23.

The administrative judge also found no merit to Mr. Spyropoulos's claim that his removal constituted whistleblower retaliation because Mr. Spyropoulos failed to establish that he had made a "protected disclosure" within the meaning of 5 U.S.C. § 2302(b)(8). *Initial Decision* at 40–41. Assuming that Mr. Spyropoulos made protected disclosures, the administrative judge determined that the agency would have removed Mr. Spyropoulos absent those alleged disclosures. *Initial Decision* at 42–43. Finally, the administrative judge sustained the penalty of removal for the charges brought by the agency, concluding that removal was reasonable under the factors articulated in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981). *Initial Decision* at 44–46.

Mr. Spyropoulos then petitioned for review before the full Board, which denied the petition and vacated in part and affirmed in part the initial decision. *See Final Order* at 1–17. The Board's decision differed from the initial decision in two primary respects. First, the Board vacated the portion of the initial decision sustaining the fourth specification underlying the lack of candor charge because of no finding that Mr. Spyropoulos acted knowingly in making certain misrepresentations to the agency. *Final Order* at 8–9. The Board ultimately sustained the overall charge for lack of candor based on the other specifications. *Final Order* at 8–9. Second, because the administrative judge determined that Mr. Spyropoulos made no protected disclosures, the Board vacated the portion of the initial decision regarding whether the agency would have removed Mr. Spyropoulos even absent his protected disclosures. *Final Order* at 12. The Board otherwise affirmed the initial decision. *Final Order* at 13–15.

Mr. Spyropoulos petitions for review. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.  DISCUSSION

We may not set aside a decision of the Board unless it is: "(1) arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).  We review the Board's conclusions of law de novo.  *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1325 (Fed. Cir. 2005).  We review the Board's findings of fact for substantial evidence.  *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1322 (Fed. Cir. 2021).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Shapiro v. Soc. Sec. Admin*, 800 F.3d 1332, 1336 (Fed. Cir. 2015)).  "The petitioner bears the burden of establishing error in the [Board]'s decision."  *Id.* (quoting *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1373 (Fed. Cir. 2019)).

Before this court, Mr. Spyropoulos raises three principal arguments.[4]  First, he argues that the Board should not have sustained his removal because the charges justifying his removal "were either manufactured or unsupported." Petitioner's Corrected Informal Opening Br. 12–20 ("Petitioner's Br.").  Second, Mr. Spyropoulos asserts that the Board "failed to address the voluminous evidence of retaliatory actions in response to [his] protected whistleblower activity."  *Id.* at 20–26.  Third, he contends that the Board ignored or discounted evidence that the deciding officer, Ms. Shellhamer, failed to apply or misapplied certain *Douglas* factors in rendering her final decision to remove

---

[4]   Mr. Spyropoulos pursued disability discrimination and retaliation claims in the proceeding before the Board. *Initial Decision* at 28–33.  On appeal, he has abandoned those claims.  *See* ECF No. 14 at 2.

him from federal service. *See id.* at 3–12. We address each argument in turn.

### A.

First, Mr. Spyropoulos challenges the charge regarding failure to safeguard PII, arguing that the agency applied an "overly broad definition of PII" and that the vast majority of the emails at issue did not contain PII or that the PII cannot be linked to a specific individual. Petitioner's Br. 19 & 19 n.40. He also contends that, in some instances, his inclusion of PII was because he had a "reasonable belief that a duty to preserve whistleblower evidence outweighed PII directives." *Id.* We need not address each of Mr. Spyropoulos's arguments as to the first charge because he has conceded that he made "four or five inadvertent PII violations" over the course of his career. *Id.* at 18. Moreover, in the context of the lack of candor charge, the SSA found that Mr. Spyropoulos sent "at least nine emails containing claimant information outside of SSA custody."[5] S. App'x 135. The above concession along with sending some emails containing PII outside of SSA custody are sufficient to sustain the first charge against him. *See Lachance v. Merit Sys. Prot. Bd.,* 147 F.3d 1367, 1371 (Fed. Cir. 1998) ("[W]here more than one event or factual specification is set out to support a single charge . . . proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge." (quoting *Burroughs v. Dep't of the Army,* 918 F.2d 170, 172 (Fed. Cir. 1990))).

---

[5] Although Mr. Spyropoulos disputes some of these nine emails, he conceded to sending some emails containing claimant information outside of SSA custody in this time period. Petitioner's Br. 18–19 & 19 n.38 (conceding to Specification No. 26 as part of his "four or five" PII violations); S. App'x 132, 135.

Second, Mr. Spyropoulos argues that the charge for lack of candor was "unfounded" because he did not knowingly make any false representations to the agency throughout its investigation. Petitioner's Br. 17–18. A charge for lack of candor may be sustained if the agency demonstrates that the employee's conduct "involve[d] a failure to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete." *Ludlum v. Dep't of Just.*, 278 F.3d 1280, 1284 (Fed. Cir. 2002).

As to three of the four relevant specifications, the Board determined that the agency had established by a preponderance of the evidence that Mr. Spyropoulos knowingly made certain misrepresentations or omissions. *Final Order* at 8–9. This determination was supported by substantial evidence. *See, e.g.*, S. App'x 135 ("You stated that you do not send these emails anymore because you were told not to. However, as specified above, from April 6, 2015 through May 5, 2015, you sent at least nine emails containing claimant information outside of SSA custody."); *Final Order* at 8–9. The Board's conclusion to sustain the second charge against Mr. Spyropoulos based on this specification was supported by substantial evidence, *see Brenner*, 990 F.3d at 1322, and the agency need only establish a single specification to support a charge, *see Burroughs*, 918 F.2d at 172. Accordingly, we reject Mr. Spyropoulos's challenge to his charge for lack of candor.

In his petition to the full Board, Mr. Spyropoulos did not challenge the administrative judge's findings as to the third and fourth charges against him, for misuse of position and misuse of government property, respectively. *Final Order* at 4 n.4. Before this court, he argues that these charges were either "manufacture[d]" or "specious." Petitioner's Br. 12. We disagree.

As to the misuse of position charge, the administrative judge credited the testimony of agency witnesses over

Mr. Spyropoulos's testimony regarding whether the information he disclosed to the third-party attorney was non-public. Specifically, the administrative judge rejected Mr. Spyropoulos's contention that he shared only publicly available information because the email to the third-party attorney "explained which of the steps of the process [were] most crucial to an [administrative law judge's] determination as to whether to grant disability benefits," and the agency witnesses credibly testified that this "information he shared was not readily available to the public." *Initial Decision* at 21. The administrative judge found that Mr. Spyropoulos furnished this information to "further his own private interests in violation of 5 C.F.R. § 2635.703(a), (b)." *Id.* The Board did not err in upholding this finding.

As to the misuse of government property charge, Mr. Spyropoulos asserts that it was unfounded because he testified that he sent the emails containing contractual agreements between the University of Virginia and Bike Entourage, LLC while he was on a break, and the agency did not present any contrary evidence. Petitioner's Br. 16–17. The applicable federal regulation limits the use of government property to "authorized purposes." 5 C.F.R § 2635.704(a). The regulation allows for "limited or de minimis personal use" if that use is in accordance "with an agency's . . . policy." *Id.* § 2635.704(b)(2). The administrative judge determined that the SSA's policy prohibited personal use of government property "when such use is to 'maintain or support a personal business,'" regardless of whether that use may otherwise qualify as a de minimis use. *Initial Decision* at 22 (citation omitted). Here, the administrative judge found that the emails, including the attached agreements, "were inappropriate personal uses of [his] government equipment." *Initial Decision* at 23. Given the evidence proffered, this finding was supported by substantial evidence as a reasonable mind could conclude that Mr. Spyropoulos sought to further his private business interests using government property.

In sum, the Board did not err in sustaining the four charges against Mr. Spyropoulos because its decision was supported by substantial evidence and otherwise in accordance with law.

### B.

Next, Mr. Spyropoulos argues that the Board failed to appropriately consider the evidence he submitted with respect to two categories of allegedly protected disclosures. Petitioner's Br. 20–26. First, Mr. Spyropoulos contends that he disclosed "gross and tortuous managerial misconduct and mismanagement" by a supervisor within the Newark hearing office. *Id.* at 20–23. Second, Mr. Spyropoulos claims he made protected disclosures when he advised the agency about alleged judicial misconduct by one of the administrative law judges who purportedly had a history of rendering "discriminatory decisions." *Id.* at 23–24. As to both arguments, Mr. Spyropoulos attacks the credibility of the agency's witnesses and suggests that the evidence he presented was more compelling. *See id.* at 20–26.

The Board properly rejected Mr. Spyropoulos's affirmative defense of whistleblower retaliation because he did not establish that he made any protected disclosures entitling him to whistleblower protection. To prevail on a claim for whistleblower retaliation, a petitioner must prove by a preponderance of the evidence that he or she made a "protected disclosure" within the meaning of 5 U.S.C. § 2302(b)(8). *See Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1322 (Fed. Cir. 1999). A "protected disclosure" is defined as "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—(i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A).

The administrative judge found that neither of the categories of disclosure constituted a protected disclosure

within the meaning of the statute. Specifically, the administrative judge found that the disclosure relating to the Newark hearing office supervisor's management style did not sufficiently allege "gross mismanagement" under 5 U.S.C. § 2302(b)(8)(A)(ii) because the conduct complained of did not create "a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission." *Initial Decision* at 41.

As for Mr. Spyropoulos's allegations of judicial misconduct, the administrative judge found that they "amounted to nothing more than disagreements with the [administrative law judge's] conclusions, over which the [administrative law judge] had discretion." *Initial Decision* at 38. Tellingly, Mr. Spyropoulos did not identify any "law, rule, or regulation" allegedly violated by the administrative law judge's actions, and Mr. Spyropoulos could not show that the administrative law judge's decisions resulted in "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *Initial Decision* at 40–41 (quoting 5 U.S.C. § 2302(b)(8)(A)(ii)). On review, the full Board determined that Mr. Spyropoulos's arguments with respect to his protected disclosures amounted to "mere disagreement with the administrative judge's well-reasoned finding that the appellant did not make protected disclosures." *Final Order* at 12. We conclude that the Board did not err with respect to Mr. Spyropoulos's allegations of judicial misconduct.

## C.

Finally, Mr. Spyropoulos argues that Ms. Shellhamer's decision cannot be sustained because she failed to consider most of the *Douglas* factors before deciding to remove him from federal service. Petitioner's Br. 3. Mr. Spyropoulos contends that Ms. Shellhamer testified that she had not considered the *Douglas* factors at all before issuing the notice of removal. Petitioner's Br. 3–12. This argument is

belied by the record. Ms. Shellhamer's notice of removal demonstrates that she considered the *Douglas* factors; indeed, each factor is listed in her notice of removal, accompanied by her reasoning as to each one. S. App'x 140–46. The Board's determination that Ms. Shellhamer properly weighed the *Douglas* factors was supported by substantial evidence and otherwise in accordance with law.

Mr. Spyropoulos's other arguments are likewise of little merit. Although Mr. Spyropoulos contends that the agency failed to sufficiently credit his eighteen years of service without prior disciplinary actions, Petitioner's Br. 4–5, we have previously affirmed the removal of employees for misuse of personal information even when they have been employed in federal service for many years. *See, e.g., Morgan v. Dep't of the Army*, 934 F.2d 310, 312–13 (Fed. Cir. 1991) (affirming removal after seventeen years of service); *see also Brewer v. United States Postal Serv.*, 647 F.2d 1093, 1098 (Ct. Cl. 1981) (affirming removal after twenty-seven years of service). We further disagree with Mr. Spyropoulos's contention that removal was disproportionate when compared to the penalties imposed on other employees within his region who disclosed PII outside of the agency. *See* Petitioner's Br. 5–7; App'x Vol. 4, Ex. M (proposed comparator evidence).[6] Although Mr. Spyropoulos could identify other employees who failed to safeguard PII and similar discrete violations, the Board appropriately rejected this argument on the ground that Mr. Spyropoulos "failed to establish that the agency knowingly and unjustifiably treated employees differently" because he could not identify any comparator who was similarly situated who engaged in comparable conduct. *Final Order* at 17.

---

[6] App'x refers to the appendix filed with the appellant's informal brief, ECF No. 19.

SPYROPOULOS v. SSA                                                      13

In short, we cannot conclude that removal was a disproportionate or otherwise unreasonable penalty for Mr. Spyropoulos.

## III. CONCLUSION

We have considered Mr. Spyropoulos's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the Board's decision.

## **AFFIRMED**

### COSTS

No costs.