# United States Court of Appeals for the Federal Circuit

---

**CHARLES T. JENKINS, JR.,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2017-2193

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-16-0080-I-2.

---

Decided: January 2, 2019

---

AARON BENJAMIN FRUMKIN, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, argued for petitioner.

TARA JEAN KILFOYLE, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by TRISTAN LEAVITT, KATHERINE MICHELLE SMITH; DAVID PEHLKE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

---

Before REYNA, WALLACH, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* WALLACH.

Dissenting opinion filed by *Circuit Judge* REYNA.

WALLACH, *Circuit Judge*.

Petitioner Charles T. Jenkins, Jr. seeks review of a Merit Systems Protection Board ("MSPB") final decision dismissing his appeal for lack of jurisdiction. *See Jenkins v. Dep't of the Army*, No. DA-0752-16-0080-I-2, 2017 WL 1209626 (M.S.P.B. Mar. 31, 2017) (J.A. 1–28).[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012). We affirm.

## BACKGROUND

For nearly thirty-three years, Mr. Jenkins was employed by the U.S. Department of the Army ("Army"), and prior to his retirement, worked as a Supervisory Army Community Services ("ACS") Division Chief. J.A. 71. From August 2010 to January 2012, Mr. Jenkins continually failed performance reviews and at one point served a three-day suspension in connection with submitting "an ACS Information Paper" to a higher command without routing and gaining the necessary approval through his first-level supervisor. *See* J.A. 400–06. As a result of his reviews, Mr. Jenkins was put on a Performance Improvement Plan ("PIP"). *See* J.A. 407–14. After notifying Mr. Jenkins that he failed his PIP, *see* J.A. 163, his first-

---

[1] An administrative judge issued an initial decision on March 31, 2017, *see* J.A. 1–28, which became final when Mr. Jenkins did not file a petition for review, *see* J.A. 21; *see also* 5 C.F.R. § 1201.113 (2014) (providing "[t]he initial decision of the judge will become the [MSPB]'s final decision [thirty-five] days after issuance" unless, inter alia, "any party files a petition for review"). Therefore, we refer to the Initial Decision as the MSPB's Final Decision.

level supervisor asked him whether he would be interested in moving to a nonsupervisory position at the same grade and pay level, J.A. 206. Mr. Jenkins refused. J.A. 119. In February 2012, Mr. Jenkins's first-level supervisor proposed his removal for unacceptable performance. J.A. 38–46 (Notice of Proposed Removal). After receiving the Notice of Proposed Removal, but before he was officially removed by the Army, Mr. Jenkins sent an email to his first-level supervisor stating that "[e]ffective 31 March 2012 I will retire." J.A. 37.

Mr. Jenkins submitted written responses challenging the basis for his removal, however, after "consider[ation] and review[ of his] written reply," the Army issued a Final Removal Decision informing Mr. Jenkins that he would be removed from service effective April 1, 2012. *See* J.A. 237–39. That same day, March 21, 2012, the Army issued Mr. Jenkins a "Cancellation of Decision on Removal" stating "[Mr. Jenkins is] scheduled to retire from federal service effective 31 March 2012" and "[i]f [he] retire[s] from federal service on 31 March 2012, this memorandum will serve as revocation and cancellation effective 31 March 2012." J.A. 47. Following the Final Removal Decision, Mr. Jenkins indicated on a Standard Form-50 ("SF-50") that he intended to retire pursuant to his previously submitted retirement application, J.A. 241–43, stating "voluntary retirement effective 31 Mar[ch] [20]12" as his "[r]easons for [r]esignation/[r]etirement" J.A. 241. It is undisputed that the "revocation and cancellation . . . of the [Notice of Proposed Removal]" took effect upon that March 31, 2012 retirement. J.A. 47 (Cancellation of Decision on Removal). Subsequently, Mr. Jenkins appealed to the MSPB alleging that his retirement was involuntary because the

agency "proposed to remove" him if he did not retire. J.A. 31–35.[2]

In March 2017, the MSPB "dismissed [Mr. Jenkins's appeal] for lack of jurisdiction." J.A. 21. Specifically, the MSPB found that it lacked jurisdiction over Mr. Jenkins's challenge to the Army's proposed removal because "the [Army] rescinded the removal decision upon [Mr. Jenkins]'s retirement" and nothing in the record indicated he sought to withdraw his retirement prior to the effective removal date. J.A. 6; *see* J.A. 336–38 (providing argument and evidence, by the Army, that the March 21, 2012 Decision of Proposed Removal issued "26-days after [Mr. Jenkins] filed an application of retirement"). The MSPB also found it lacked jurisdiction over his involuntary retirement claim because Mr. Jenkins failed to make a non-frivolous claim. J.A. 21.

DISCUSSION

Mr. Jenkins contends the MSPB erred by finding it lacked jurisdiction over his claim because: (1) "the Army issued [the] [F]inal [R]emoval [D]ecision before Mr. Jenkins retired," Pet'r's Br. 17 (capitalizations modified); *see id.* at 17–25, and (2) its decision that his retirement was voluntary was not supported by substantial evidence due to the fact that his retirement was "based on misinformation" and "was obtained through coercion," *id.* at 26, 29; *see id.* at 25–33. We first discuss the relevant standards of review and legal standards, and then address each of Mr. Jenkins's arguments.

---

[2]    When Mr. Jenkins filed his Federal Circuit Rule 15(c) Statement Concerning Discrimination on July 7, 2017, he abandoned his formerly asserted discrimination claims. Pet'r's Fed. Cir. R. 15(c) Statement, ECF No. 10; *see* Oral Arg. at 12:31–40, http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2017-2193.mp3.

## I. Standard of Review

We will uphold a decision of the MSPB unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1), (3) (2012). We review whether the MSPB has jurisdiction over an appeal de novo. *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). "Findings of fact underlying the [MSPB]'s jurisdictional decision are reviewed for substantial evidence." *Bledsoe v. Merit Sys. Prot. Bd.*, 659 F.3d 1097, 1101 (Fed. Cir. 2011) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla of evidence, but less than the weight of the evidence." *Jones v. Dep't of Health & Human Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016) (internal quotation marks and citations omitted). "The petitioner bears the burden of establishing error in the [MSPB]'s decision." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## II. The Improper Removal Claim

### A. Legal Standard

The MSPB's "jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation." 5 C.F.R. § 1201.3(a). The petitioner must establish by preponderant evidence that the MSPB has jurisdiction over his appeal. 5 C.F.R. § 1201.56(b)(2)(i)(A). Generally, the MSPB has jurisdiction over appeals of removals of non-probationary employees, based on unacceptable performance. *See* 5 C.F.R. § 1201.3(a)(5); 5 U.S.C. § 4303(e). "If an appealable action is canceled or rescinded by an agency, any appeal from that action becomes moot," thereby depriving the MSPB of jurisdiction. *Cooper v. Dep't of the Navy*, 108 F.3d 324, 326 (Fed. Cir. 1997).

B. The MSPB Did Not Err in Holding It Lacked Jurisdic-
tion over the Removal Claim

The MSPB held that, because "[Mr. Jenkins] retired
*before* the removal action was effected, and the [Army]
rescinded the removal decision upon [his] retirement," the
MSPB lacked jurisdiction over his appeal challenging the
proposed removal.  J.A. 6 (emphasis added).  Mr. Jenkins
avers the MSPB has jurisdiction over his appeal because
his retirement date was "*after* the Army issued a final
decision to remove him."  Pet'r's Br. 17 (emphasis added).
We disagree with Mr. Jenkins.

The sequence of retirement and rescission is not con-
trolling.  Rather, the MSPB lacked jurisdiction because
the Army rescinded its removal.  The Army proposed
removal of Mr. Jenkins on February 16, 2012, J.A. 38, Mr.
Jenkins indicated his intent to retire on February 23,
2012, J.A. 236, and the Army issued its Final Removal
Decision on March 21, 2012, J.A. 237–39.  However, the
same day his retirement went into effect, the Army *re-
scinded the removal decision*.  J.A. 47 (Cancellation of
Decision on Removal).  The Army removed all references
to the proposed removal action in Mr. Jenkins's personnel
file, thus eliminating any potential consequences the
removal could have had on his retirement.  *See* J.A. 240–
43 (demonstrating that the Notice of Proposed Removal
and SF-50 do not reference the removal decision), 333
(acknowledging the agency evidence and arguments were
made under penalty of perjury), 358 (showing a printout
of a chronological listing of Mr. Jenkins's SF-50s from
2010 through 2012).  This rescinding of the removal
decision mooted Mr. Jenkins's improper removal claim.
*See Cooper*, 108 F.3d at 326 (explaining, "[i]f an appeala-
ble action is canceled or rescinded by an agency, any
appeal from that action becomes moot" and that the
petitioner's appeal was moot because the agency, inter
alia, removed "all references to [the removal action] from
[his] official personnel file" thereby "eliminat[ing] all

consequences of that action"). Therefore, the MSPB lacked jurisdiction to hear the appeal.

Mr. Jenkins's primary counterargument fails. He contends that his challenge to the removal is appealable to the MSPB under 5 U.S.C. § 7701(j) because the MSPB "consider[ed] [his] 'retirement status'" when determining whether it had jurisdiction. Pet'r's Br. 23. Section 7701(j) provides that the MSPB, in "determining the appealability . . . of any case involving a removal from the service," may not take into account "*an individual's status* under any retirement system established by or under Federal statute." 5 U.S.C. § 7701(j) (emphasis added); *see Mays v. Dep't of Transp.*, 27 F.3d 1577, 1579 (Fed. Cir. 1994) (holding that "[t]he plain language of § 7701(j) means that retirement status cannot be taken into account in determining the appealability of 'any case involving a removal'"). In *Mays*, we considered § 7701(j) and held that the MSPB had jurisdiction over petitioner's appeal because the petitioner's retirement was effective the same date as her removal and her retirement form stated she "[r]etired after receiving [final] written notice . . . of [the] decision to separate." 27 F.3d at 1578.

*Mays* did not involve a rescission of the removal decision being appealed to the MSPB. In contrast, in *Cooper*, we held that when an agency has "rescinded" an effectuated removal action during the pendency of an appeal, eliminated "all references to [the removal] action from [a petitioner]'s official personnel file," and "substituted a separation" based on retirement for the removal, the appeal of the removal is moot and § 7701(j) is not implicated. 108 F.3d at 325–26; *see id.* (determining that, because "the agency had rescinded his removal[,] the [MSPB] did not need to consider [the appellant]'s retirement status to reach its conclusion that his appeal was

moot").[3]   This case is governed by *Cooper*.  Therefore, § 7701(j) does not provide jurisdiction because the case no longer involved a removal.  *See id.* at 326 (finding § 7701(j) did not apply).  Because Mr. Jenkins's case no longer involved a removal, the MSPB did not need to consider Mr. Jenkins's retirement status in determining that it lacked jurisdiction over the appeal.

### III. The Involuntary Retirement Claim

### A. Legal Standard

An involuntary retirement is an adverse employment action "where an agency imposes the terms of an employ-

---

[3]   The dissent states that the majority believes this case is unlike *Mays* because "removing from Mr. Jenkins's file all the references to [his] removal eliminated 'all consequences' of the removal" and that "Mr. Jenkins would not have retired but for his removal."  Dissent Op. 6.  The dissent, however, fails to recognize that *Mays* did not involve a rescission of a removal decision being appealed to the MSPB.  Like *Cooper*, the MSPB in this case considered the *rescission* of the removal decision in making the determination that it lacked jurisdiction over the appeal.  *See Cooper*, 108 F.3d at 326 (explaining, "in deciding that [the] appeal was moot, the [MSPB] merely relied on the fact that the agency had rescinded his removal").  Section 7701(j) does not prohibit an *employing agency* from taking an employee's retirement status into account in deciding whether to cancel a removal decision; it only prohibits the *MSPB* from taking an appellant's retirement status into account in determining whether a non-cancelled removal decision is appealable.  *See id.* Because the MSPB determined the Army rescinded Mr. Jenkins's removal decision, as in *Cooper*, it did not need to consider his retirement status to determine that it lacked jurisdiction over the appeal.  J.A. 6.

ee's resignation, the employee's circumstances permit no alternative but to accept, and those circumstances were the result of improper acts of the agency." *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987) (internal quotation marks omitted). "The [MSPB] has jurisdiction over an involuntary retirement, which is treated as if it were a removal." *Cooper*, 108 F.3d at 326. "An employee thus may seek reinstatement or back pay as a result of an involuntary retirement." *Id*. There is a presumption that an employee retired voluntarily. *Staats v. U.S. Postal Serv.*, 99 F.3d 1120, 1123 (Fed. Cir. 1996). To overcome this presumption, a petitioner must establish (1) the retirement was the product of misinformation or deception by the agency; or (2) the retirement was the product of coercion by the agency. *Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000); *see Staats*, 99 F.3d at 1124 ("[T]he doctrine of coercive involuntariness is a narrow one."). The test for involuntariness is "an objective one" that "considers the totality of the circumstances." *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1329 (Fed. Cir. 2006) (en banc) (internal quotation marks and citation omitted).

### B. Substantial Evidence Supports the MSPB's Finding that Mr. Jenkins's Retirement Was Voluntary

The MSPB considered all record evidence related to the voluntariness of Mr. Jenkins's retirement, *see* J.A. 14–17 (analyzing, inter alia, the length of time offered to improve performance, testimony and written records regarding performance deficiencies, and various communications between Mr. Jenkins and his first-level supervisor), and determined that while Mr. Jenkins was faced with the difficult choice of either retiring or opposing a removal action, this choice did not render his retirement involuntary because he chose to follow through with his retirement decision, J.A. 20–21. Mr. Jenkins argues his retirement was involuntary because it was based on "misinformation" such as "management officials"

telling him that he needed to retire to protect his retirement benefits, Pet'r's Br. 26, and that it was obtained through "coercion," *id.* at 29. We disagree with Mr. Jenkins.

Substantial evidence supports the MSPB's finding that Mr. Jenkins voluntarily retired. First, Mr. Jenkins submitted personnel forms that indicate that his retirement from the Army was voluntary. Specifically, under the section asking for reasons for retirement it said "[v]oluntary retirement." *See* J.A. 243; *see* J.A. 243 (stating in the SF-50 the reason for retirement is "[v]oluntary retirement").

Second, Mr. Jenkins's retirement was not the product of misinformation by the agency. The only evidence of record cited by Mr. Jenkins regarding any alleged misrepresentation is that an unidentified individual told Mr. Jenkins he should retire "to protect his retirement benefits." J.A. 425; *see* J.A. 425 (providing Mr. Jenkins's prehearing submissions). This evidence is insufficient to support Mr. Jenkins's position because he never identified any individual who made this statement nor did he provide any foundation for the alleged statement. *See* J.A. 425; *see also* J.A. 18–19 (explaining by the MSPB that Mr. Jenkins admitted he did not receive misinformation about the ability to retire from Human Resources); *cf. Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1573–75 (Fed. Cir. 1983) (finding involuntary retirement where petitioner proved reasonable reliance on a misrepresentation made by a specific agency counselor). For the first time on appeal, Mr. Jenkins argues that a notation on his final Notification of Personnel Action Form says his reason for retirement was "to obtain retirement benefits." Pet'r's Br. 27–28. While this notation may demonstrate the Army knew Mr. Jenkins misunderstood the effect a removal would have on his retirement benefits, it does not evidence reliance by Mr. Jenkins upon alleged agency misinformation. J.A. 241. Importantly, Mr. Jenkins

provided no evidence that he desired to retire based on that belief.  *See* J.A. 18–19 (explaining by the MSPB that Mr. Jenkins provided no "specifics regarding the alleged misrepresentation"); *see* Pet'r's Br. 27–28.  After he received the Notice of Proposed Removal, J.A. 38–46, and was informed of his appeal rights by the Army, J.A. 87, he still elected to retire.

Third, Mr. Jenkins's retirement was not caused by coercion.  Mr. Jenkins argues that his retirement was the product of coercion because the Army "imposed the terms of [his] retirement" and he had "no [alternative] but to retire."  Pet'r's Br. 30–31.  A petitioner can establish his retirement was the product of coercion if he proves by preponderant evidence that an agency created "working conditions so intolerable" that he was "driven to involuntarily . . . retire."  *Garcia*, 437 F.3d at 1328–29.  "[T]o establish involuntariness on the basis of coercion" due to a threatened or proposed adverse action, the employee must show that:  (1) he involuntarily accepted the terms "effectively imposed" by the agency; (2) the circumstances presented "no realistic alternative" but to retire; and (3)  his retirement was the result of "improper acts of the agency."  *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001).  Here, however, Mr. Jenkins has adduced no evidence to demonstrate that his working conditions were intolerable.  *See generally* Pet'r's Br.  Instead, Mr. Jenkins simply had the choice of not retiring and opposing the removal, or retiring.[4]  Thus, the MSPB correctly found

---

[4]    The dissent states that "the Army put Mr. Jenkins in precisely the situation of making a forced choice because its offer to rescind his removal was conditioned upon Mr. Jenkins first retiring."  Dissent Op. 2.  In *Schultz*, however, we explained that when "an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited

Mr. Jenkins failed to demonstrate that his retirement was involuntary.

CONCLUSION

We have considered Mr. Jenkins's remaining arguments and find them unpersuasive. Accordingly, the Final Decision of the Merit Systems Protection Board is

**AFFIRMED**

---

choices do not make the resulting resignation an involuntary act." 810 F.2d at 1136. Here, the MSPB simply relied on *Schultz*, in addition to several MSPB cases, in holding that the "unpleasant choice" to retire or be removed "does not rebut the presumed voluntariness" of the decision to retire. *See* J.A. 16 (citations omitted). While Mr. Jenkins argues that his factual situation was different because the "rescission was expressly conditioned" on his retirement, Pet'r's Br. 25, our precedent does not support such a distinction, *Schultz*, 810 F.2d at 1136.

# United States Court of Appeals for the Federal Circuit

---

**CHARLES T. JENKINS, JR.,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2017-2193

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-16-0080-I-2.

---

REYNA, *Circuit Judge*, dissenting.

The majority concludes that the Merit Systems Protection Board lacks jurisdiction to review the agency's removal decision because the agency rescinded its removal decision in exchange for Petitioner Charles T. Jenkins, Jr.'s retirement. *See* Maj. Op. 5–8. As a result, the majority opinion undermines congressionally mandated protections for federal employees recognized by this court in *Mays v. Department of Transportation*, and provides federal agencies a playbook on how to structure the removal of federal employees to preclude judicial review of removal decisions. Now, the Catch-22 dilemma imposed on Mr. Jenkins will ensnare federal employees in the future. I respectfully dissent.

### 1. Section 7701(j)

Section 7701(j) of Title 5 of the United States Code prohibits the Board from considering in "any case involving a removal from the service . . . an individual's status under any retirement system . . . [or] any [retirement] election." In passing this statute as part of the Civil Service Due Process Amendments of 1990, "Congress intended to end the situation which forced federal employees to choose between appealing a removal action and accepting retirement benefits." *Mays v. Dep't. of Transp.*, 27 F.3d 1577, 1580 (Fed. Cir. 1994). Yet the Army put Mr. Jenkins in precisely the situation of making a forced choice because its offer to rescind his removal was conditioned upon Mr. Jenkins first retiring.

### 2. Mays

This court's decision in *Mays* plainly applies to this case. In *Mays*, we held that the appellant retained her appeal rights when she separated from service through retirement after "the agency had made the final decision to remove her." 27 F.3d at 1580–81. Ms. Mays first received an initial notice of proposed removal. *Id.* at 1577–78. The agency then informed Ms. Mays by decision letter that removal had been approved and she would be removed from her position a few days later. *Id.* at 1578. Ms. Mays retired on the same date her removal became effective. *Id.* The SF-50 form in her personnel file indicated that she "[r]etired after receiving written notice . . . of [the] decision to separate for unacceptable performance." *Id.* Ms. Mays appealed her removal, which the Board dismissed for lack of jurisdiction, holding that she had "divested the Board of jurisdiction" unless she could prove "her retirement was involuntary" because she retired on the same effective date as her removal. *Id.*

This court reversed upon determining that 5 U.S.C. § 7701(j) controls because Ms. Mays's case "involve[d] a removal," despite her retirement. *Id.* at 1581. We con-

cluded that the case "involved a removal" because Ms. Mays could not "escape the final agency decision to remove her," and the agency did not dispute that Ms. Mays would not have retired when she did but for the removal action. *Id.* at 1580. The court found that the Board erred by considering Ms. Mays's retirement status, which § 7701(j) prohibited because her case involved a removal. *Id.* We pointed to the legislative history of § 7701(j), noting that the legislation promised to "allow[] an employee who is eligible to retire but who the agency wants to fire to take his or her annuity and still challenge the adverse action before the [Board]." *Id.* The majority opinion breaks away from that promise.

### 3. Cooper

The majority relies on *Cooper v. Department of the Navy*. Maj. Op. 7–8. In *Cooper*, the Navy removed Mr. Cooper for inability to perform his duties. *Cooper v. Dep't of the Navy*, 108 F.3d 324, 325 (Fed. Cir. 1997). Mr. Cooper appealed, and in the course of the appeal, applied for disability retirement benefits. *Id.* Despite the removal decision, OPM approved Mr. Cooper for retirement benefits. *Id.* As to removal, the Board "held that as long as the removal was effected prior to OPM's grant of disability retirement, the Board had jurisdiction to hear the appeal, regardless of the effective date of the retirement." *Id.* In response to the Board's holding, the Navy rescinded Mr. Cooper's removal, removed all references to the removal action from his personnel file, and substituted a disability retirement separation for the removal. *Id.* The Board then dismissed the appeal as moot. *Id.*

We affirmed in *Cooper*, holding that "[t]he Navy's cancellation of the removal action and the removal of all references to that action from Cooper's official personnel file eliminated all the consequences of that action and thus rendered Cooper's appeal moot." *Id.* at 326. The *Cooper* court recognized the *Mays* court's characterization

of § 7701(j) as intended to "ensure that an employee who was eligible for retirement at the time of his removal could take a retirement annuity without forfeiting his right to challenge his removal." *Id.* Mr. Cooper specifically argued that to hold his appeal was moot would permit agencies to avoid review of removal decisions by removing an employee, waiting for that employee to file for retirement, and then rescinding the removal and moving to dismiss the appeal. In dismissing that argument, the *Cooper* court relied on the ability of employees to argue involuntary retirement as a safeguard against such agency tactics. *See id.* at 326.

The removal in this case is closer to *Mays* than *Cooper*. As in *Mays*, the agency in this case initially proposed removal, made a final decision to terminate, and took action by notifying Mr. Jenkins that he would be terminated. In addition, Mr. Jenkins retired the same day removal was effected and would not have retired but for the removal. The majority is correct that *Mays* did not involve a rescission of removal. But *Mays* remains applicable here because, like the agency in *Mays*, the Army forced its employee to choose between appealing the removal action and accepting retirement benefits, directly contravening the congressional intent of § 7701(j). As Mr. Jenkins argues, he retired to "protect his retirement benefits." Maj. Op. 10; *see also* J.A. 241 (SF-50 form reflecting that he retired "to obtain retirement benefits"). The March 21, 2012 "Cancellation of Decision on Removal" memorandum received by Mr. Jenkins makes clear that rescission of his removal was conditioned upon him first retiring:

> *If you retire* from federal service on 31 March 2012, this memorandum will serve as *revocation* and cancellation effective 31 March 2012 of the [Notice of Decision] dated 21 March 2012. However, *if you do not retire* effective 31 March 2012, the [Notice of Decision] dated 21 March 2012 will not

> be revoked and cancelled and your *removal* from your position and federal service will be effective as of 1 April 2012.

J.A. 240 (emphases added).

By contrast, Mr. Cooper's agency never forced him to choose between appealing his removal action and accepting retirement benefits. The agency removed Mr. Cooper, and it was only after he appealed the removal decision that he applied for retirement benefits. Mr. Cooper was not offered rescission in exchange for retiring and giving up his right to appeal.

The majority states that the "sequence of retirement and rescission is not controlling." Maj. Op. 6. But timing is not what distinguishes this case from *Cooper*. The question is whether there was a conditional offer of rescission in exchange for voluntary retirement. This distinction is key in the context of § 7701(j). In *Cooper*, the Board "merely relied on the fact that the agency had rescinded his removal [and] did not need to consider Cooper's retirement status to reach its conclusion that his appeal was moot." 108 F.3d at 326. But here, in direct violation of § 7701(j), the Board expressly considered Mr. Jenkins's retirement in concluding that the removal had been rescinded as a direct result of his retirement:

> Here, the appellant *retired* before the removal action was effected, and the agency *rescinded the removal decision upon the appellant's retirement.* The agency removed all references to the removal action in the employee's personnel file, eliminating all consequences of the removal.

J.A. 6 (emphases added). By conditioning rescission upon Mr. Jenkins's retirement, the agency forced the Board to "consider [the employee's] retirement status to reach its conclusion that his appeal was moot." *Cooper*, 108 F.3d at 326. Unlike in *Cooper*, the Board could not have consid-

ered the rescission without also considering Mr. Jenkins's retirement status.

Finally, the majority reasons that removing from Mr. Jenkins's file all the references to Mr. Jenkins's removal eliminated "all consequences" of the removal, therefore making this case unlike *Mays*. Maj. Op. 6, 7–8 n.3. This is incorrect because Mr. Jenkins would not have retired but for his removal. In addition, removing references to the removal action from his file was conditioned on another more enduring and significant consequence: Mr. Jenkins loses his right to challenge the removal action by making an appeal.

The majority decision is an exercise in splitting hairs that runs contrary to the Supreme Court's directive to take an "expansive view" of "remedial legislation." *Ne. Marine Terminal Co. v. Caputo*, 432 U.S. 249, 268 (1977); *see also Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1149 (Fed. Cir. 1999) (discussing that the Civil Service Due Process Amendments of 1990, of which § 7701(j) is a part, were intended to "remedy [the] state of affairs" for certain federal employees). To distinguish this case from *Mays* on the basis that Mr. Jenkins's record was wiped clean of references to his removal is inconsistent with this court's obligation to interpret such statutes to "avoid untenable distinctions and unreasonable results whenever possible." *Mays*, 27 F.3d at 1580 (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982), and refusing to distinguish the case on the basis of what a personnel officer writes in an employee's file).

Here, reversal is warranted to condemn what are iniquitous tactics by agencies to force employees to choose whether to be fired, or to retire. They are iniquitous because the tactics insulate agency decisions from judicial review in cases where employees choose to preserve their retirement benefits. The result of this choice is the employee's loss of the valuable ability to appeal conferred by

federal statute. *See* 5 U.S.C. § 7701(a). To read *Cooper* as holding that all rescinded removal decisions escape the scope of § 7701(j), especially when offered in exchange for an employee's voluntary retirement, is counter to legislative intent. Once an employee has been forced to make this choice, what a personnel officer writes in the employee's file is a distinction that makes no difference. The majority's decision will incentivize agencies to condition rescissions of removals on an employee's first retiring to avoid the burden of defending removal actions.

The Government argues that Mr. Jenkins has not been prejudiced because he can argue involuntary retirement. *See Cooper*, 108 F.3d at 326. The majority concludes that Mr. Jenkins could not show involuntary retirement because he could not show intolerable working conditions, and simply having to make a choice is not sufficient to establish coercion. The majority notes that "Mr. Jenkins simply had the choice of not retiring and opposing the removal, or retiring." Maj. Op. 11. This characterization disregards the importance of pension benefits to our nation's federal employees. The majority's decision creates a jurisdictional loophole by showing agencies how to divest federal employees of their right to appeal a removal in the interest of protecting those benefits, while ensuring their retirement remains sufficiently voluntary to keep the Board from having jurisdiction at all. *See Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987).[1] Forcing a choice between retiring and keep-

---

[1]    The majority relies on *Schultz* for the proposition that that "where an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act." *Id.* In that case, we reversed the Board's finding of lack of jurisdiction on the grounds that the employee's retirement was

ing your benefits or termination and loss of benefits is an act of coercion, the very abuse that Congress recognized by passing § 7701(j). *See Mays*, 27 F.3d at 1580. Here, we have lost sight of the inherent right to appeal adverse employment decisions that Congress has afforded to federal employees. *See* Civil Service Due Process Amendments, Pub. L. No. 101-376, 104 Stat. 461, 461 (1990) ("An Act . . . to grant appeal rights to members of the excepted service affected by adverse personnel actions."). The safeguard hypothesized in *Cooper* fails to protect against abuses such as the conditional rescission of removal offered by the Army. For these reasons, I respectfully dissent.

---

involuntary because the agency threatened removal for an improper basis. *Id.* at 1136–37. That case has no bearing on whether an agency's final removal decision that is rescinded in exchange for an employee's voluntary retirement should escape review under § 7701(j).