NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN S. WILLIS,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2020-1953

---

Petition for review of the Merit Systems Protection Board in No. AT-0831-19-0476-A-1.

---

Decided: April 29, 2021

---

JENNIE CATHRYNE BLAINE WATSON, Swick and Shapiro, PC, Washington, DC, for petitioner.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washigton, DC for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before O'MALLEY, REYNA, and STOLL, *Circuit Judges.*

REYNA, *Circuit Judge.*

Petitioner appeals a decision of the Merit Systems Protection Board denying attorneys' fees and costs. The Merit Systems Protection Board found that the petitioner did not demonstrate entitlement to an award of attorneys' fees and costs. Because the decision is supported by substantial evidence and is not otherwise contrary to law, we affirm.

BACKGROUND

On October 31, 1998, John S. Willis retired after thirty years as a Special Agent with the Federal Bureau of Investigation ("FBI") and four years in the Army. J.A. 23, 89. At that time, he was married to Donis Willis, née Suiter (hereafter "Ms. Suiter"). J.A. 94. Mr. Willis elected a survivor annuity benefit for Ms. Suiter under the Civil Service Retirement System. J.A. 89. Mr. Willis's retirement annuity was correspondingly reduced due to the benefit provided to his wife. *Id.*

Mr. Willis and Ms. Suiter divorced on August 18, 2000. J.A. 94. Pursuant to the terms of the divorce settlement, Mr. Willis kept Ms. Suiter as a survivor annuitant for the remainder of her life. J.A. 94–95, 247–53. Eventually, the two became estranged and stopped speaking. J.A. 89.

In March 2009, Mr. Willis married his current wife, Karen Willis. J.A. 24, 89, 127. Later that month, Mr. Willis called the Office of Personnel Management ("OPM") to inquire whether he could obtain survivor annuity benefits for his new wife. J.A. 89, 96. Mrs. Willis was present for the call. In response to Mr. Willis's question, the person on the phone stated, "Absolutely not!" J.A. 89. As such, Mr. Willis and Mrs. Willis believed that Mrs. Willis was not qualified for survivor annuity benefits as long as Ms. Suiter was alive. J.A. 89.

Mr. Willis was unaware that Ms. Suiter died on December 31, 2014. He learned of her passing three years later, on December 8, 2017. J.A. 107. He telephoned OPM to ask

how to obtain the survivor annuitant benefits for Mrs. Willis now that Ms. Suiter was no longer living. OPM sent Mr. Willis a letter in December 2017 with the necessary forms. OPM's letter explained that for him to receive the full annuity at an unreduced rate (that is, without Ms. Suiter's portion removed), he needed to have provided a copy of Ms. Suiter's death certificate or a copy of the divorce order within two years of death or divorce.[1] J.A. 99. Additionally, the letter explained that if he married again and wanted to obtain survivor annuity benefits for his new spouse, he needed to have informed OPM within two years of the marriage. *Id.* According to Mr. Willis, this is the first time that he learned of a two-year notice requirement pertaining to both Ms. Suiter's death and his remarriage to Mrs. Willis.

Mr. Willis filled out the forms that OPM sent him and submitted them on December 16, 2017. J.A. 90. On the cover page accompanying his forms, he inadvertently identified the March 2009 phone call as having occurred in January 2016. *See* J.A. 101 ("I married Karen on 03/09/2009, at Raleigh, Wake County, NC. I spoke to someone at OPM by phone in 01/2016."). After mailing in the forms, he alleges that he diligently inquired about the status of his requests by calling OPM to follow up on January 26, 2018; March 14, 2018; April 10, 2018; May 30, 2018; and June 6, 2018. Petitioner's Br. 4. Each time he was purportedly told that his request had not yet been assigned. *Id.* OPM's records reflect only one call in June 2018. J.A. 255.

On January 8, 2018, after realizing that he accidentally signed on a line meant for an OPM representative, Mr. Willis resubmitted his forms. J.A. 90, 101–108. Rather than

---

[1]    Due to the clause in the divorce settlement, J.A. 94–95, 247–53, Ms. Suiter's right to survivor annuity would not have terminated upon divorce—only upon her death.

correcting his error regarding the March 2009 phone call, the cover letter to the new submission stated: "Shortly after my marriage to Karen I notified OPM of our marriage[.]" J.A. 102.

On July 19, 2018, OPM denied his request because it was not filed within two years of Ms. Suiter's death or his marriage to Mrs. Willis. J.A. 107, 109–10. The following week, Mr. Willis filed a request for reconsideration of this denial. J.A. 111. The request for reconsideration did not identify the March 2009 call, but stated that Mr. Willis did not "receive any notice from [OPM] that there was a time deadline on inserting my current spouse as the beneficiary, which I tried to do, because you had instructed me that this could not be done while my former spouse was alive." *Id.* Upon obtaining legal counsel, Mr. Willis submitted a supplemental filing in October 2018. J.A. 112–26. As to the March 2009 call, the supplemental submission did not indicate when the call occurred, but simply that "[s]hortly after marrying Karen," Mr. Willis contacted OPM, J.A. 113, and that he "tried to get Karen survivor spouse status upon his marriage to her," J.A. 115.

OPM denied Mr. Willis's request in April 2019. J.A. 45–47. It explained that he missed the two-year time period for filing his request. J.A. 45–46. OPM further explained that he could have "voluntarily elected" to designate Mrs. Willis "as a survivor in the event" of Ms. Suiter's death. J.A. 46. OPM added that it sympathized with Mr. Willis but had no discretion in the matter. *Id.*

Mr. Willis appealed this decision to the Merit Systems Protection Board ("MSPB") in May 2019. In August 2019, Mr. Willis moved to compel Verizon to produce phone records showing that he called OPM in March 2009. J.A. 223–34. Because his motion was improper, the Administrative Judge ("AJ") denied it. J.A. 237. In a footnote, the AJ stated that Mr. Willis had advanced an argument that OPM had misled him, but that the argument was "not yet

well developed and he provided no case citations supporting [his] argument that the statutory deadline can be waived under such circumstances." J.A. 237 n.1. Mr. Willis's counsel renewed the request to compel production of the phone records, correcting prior errors, which was granted. J.A. 240–43. Mr. Willis also submitted an affidavit in support of his motion. J.A. 62. The affidavit declared that Mr. Willis sought phone records from March 9, 2009 to March 9, 2011 to corroborate that he had called OPM "soon after [his] marriage to Karen" and that "OPM personnel told [him] Karen was 'absolutely not' eligible to [be] named a survivor annuitant of [his] federal retirement benefits as long as [his] first wife was still living. No mention was made of any need to designate Karen a survivor annuitant within 24 months of [their] marriage." J.A. 62.

The parties held a prehearing conference on August 15, 2019 during which it became clear that Mr. Willis and Mrs. Willis would testify about one or more calls made to OPM in which they received misinformation. J.A. 86, 89-91. Specifically, Mr. Willis's prehearing submission indicated that the first call to OPM occurred in 2009. J.A. 80, 86, 90. OPM's pre-hearing submissions included copies of annual notices of Mr. Willis's election rights that he would have received each year since 2000 informing him of the two-year deadlines. J.A. 262–313.

A hearing was held on October 3, 2019. Mr. Willis and Mrs. Willis testified that, during a March 2009 call to OPM, the "OPM representative stridently and repeatedly advised that there was nothing they could do to provide benefits for Karen during [Ms. Suiter]'s lifetime." J.A. 24. Mr. Willis conceded that OPM had provided him proper written notices of his right to make a survivor annuity election. J.A. 25–26, 262–313.

The MSPB issued a decision on October 31, 2019, in favor of Mr. Willis on the basis that OPM misled him in its guidance to him and, therefore, equitable tolling applied to

the deadlines. J.A. 26–27. The AJ noted that the two-year deadlines "may only be waived in this case if equitable estoppel is appropriate due to affirmative misconduct by OPM." J.A. 26. Here, the AJ determined that equitable estoppel applied because OPM had misadvised Mr. Willis "about his ability to make an alternative election for his new spouse in the event [Ms. Suiter] predeceased him." J.A. 26. The AJ found Mr. Willis's testimony regarding the March 2009 call credible because it was based on his own personal recollection, Mrs. Willis corroborated it, and his employment at the FBI made him "an individual trained to fully appreciate the gravity of sworn testimony." J.A. 26–27.

Following this favorable ruling, Mr. Willis moved for attorneys' fees and costs in January 2020 in the amount of $82,932.18. J.A. 168–77. Mr. Willis relied on *Allen v. United States Postal Service*, in which the MSPB set forth a non-exhaustive list of categories in which attorneys' fees may be warranted in the interest of justice:

(i)　　The agency engaged in a "prohibited personnel practice";

(ii)　　The agency action was "clearly without merit" or was "wholly unfounded," or the employee is "substantially innocent" of the charges brought;

(iii)　　The agency initiated the action in "bad faith";

(iv)　　The agency committed a "gross procedural error" which "prolonged the proceeding" or "severely prejudiced" the employee;

(v)　　The agency "knew or should have known that it would not prevail on the merits" when it brought the proceeding.

*Allen v. U.S. Postal Serv.*, 2 M.S.P.R. 420, 434–35 (M.S.P.B July 22, 1980). Mr. Willis relied principally on the following two arguments: OPM's action was "clearly without merit," satisfying *Allen* factor two; and OPM "knew or should have known that it would not prevail on the merits"

when it brought the proceeding, satisfying *Allen* factor five. J.A. 169.

In response to Mr. Willis's first argument, OPM asserted that it had determined its position was meritorious after inspecting all of the documentary evidence in the case. J.A. 322–23. OPM added that the fact that the MSPB ultimately found Mr. Willis's testimony credible did not indicate that OPM's position was "clearly without merit," since reasonable minds could differ. J.A. 331.

In response to Mr. Willis's second argument, OPM explained that it based its position on what it knew at the time. J.A. 321. OPM contends that, had it known of the divorce, OPM would have advised Mr. Willis of his rights in the event he remarried. J.A. 322. OPM also referred to at least eight annual notices that were sent to Mr. Willis informing him of his rights should he decide to remarry. J.A. 322; *see also* J.A. 262–313. OPM alleges that Mr. Willis made no argument these notices were insufficient to inform him of his rights. J.A. 322.

As to attorneys' fees, OPM argued that costs requested by Mr. Willis were unreasonable because the hours claimed were erroneous, vague, excessive, and duplicative; because the travel expenses were excessive;[2] and because the hourly rate utilized was excessive. J.A. 329–30.

The AJ denied attorneys' fees, finding that Mr. Willis did not prove that awarding fees was in the interest of justice. J.A. 2–3. In reaching this conclusion, the AJ assessed whether OPM knew or should have known that it could not prevail in its principal case against Mr. Willis and whether OPM's case was clearly without merit.

---

[2]   Mr. Willis's attorney flew first-class from Washington, D.C. to Atlanta for the MSPB hearing, a flight that cost over $1,000. J.A. 206.

The AJ concluded that the dispositive merits of the underlying case was the credibility determination reached concerning Mr. Willis's testimony about the March 2009 phone call. J.A. 3. The AJ noted that evidence supporting equitable tolling was scant prior to the October 2019 hearing. J.A. 3–4. The AJ reasoned that there was no way OPM could have known or should have known that it could not prevail because it could not have accounted for the credibility determination that would be reached at the hearing. OPM thus was justified in believing it had a meritorious case given the number of annual notices sent to Mr. Willis, and the absence of extraordinary circumstances warranting equitable tolling prior to the hearing. J.A. 6–7. Further, because the evidence that tipped the scales in Mr. Willis's favor was not presented until the MSPB hearing, the AJ concluded that OPM did not unnecessarily prolong the litigation. J.A. 7–8.

On April 15, 2020, the AJ decision became final. J.A. 1–16. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

This court will uphold a decision by the MSPB unless it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,' or 'unsupported by substantial evidence.'" *Hickey v. Dep't of Homeland Sec.*, 766 F. App'x 970, 974 (Fed. Cir. 2019) (quoting 5 U.S.C. § 7703(c)(1), (3)). An abuse of discretion occurs where a decision is "based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Tartaglia v. Dep't of Veterans Affairs*, 858 F.3d 1405, 1407–08 (Fed. Cir. 2017) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence," "but less than the weight of the evidence." *Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016)

(internal quotation marks and citations omitted). The appellant bears the burden of establishing error. *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1373 (Fed. Cir. 2019).

Following a ruling on the merits, the MSPB may award reasonable attorneys' fees if the employee or applicant is the prevailing party[3] and the MSPB determines that "payment by the agency is warranted in the interest of justice." *Hickey*, 766 F. App'x at 974; 5 U.S.C. § 7701(g)(1). The MSPB relies on the *Allen* factors to determine whether attorneys' fees are warranted. Here, the MSPB relied on the fifth *Allen* factor: whether OPM "knew or should have known that it would not prevail on the merits when it brought the proceeding." J.A. 3. Under the "knew or should have known" *Allen* factor, the MSPB considers whether OPM was negligent in processing the application; lacked a reasonable or supported explanation for its position; or ignored clear, unrebutted evidence that the appellant satisfied the criteria for a benefit. *See Stewart v. Off. of Pers. Mgmt.*, 70 M.S.P.R. 544, 548 (M.S.P.B. May 24, 1996).

Under the fifth *Allen* factor, "[f]ees are warranted in the interest of justice when OPM knew or should have known that it would not prevail on the merits at the time it issued its reconsideration decision." *Kent v. Off. of Pers. Mgmt.*, 33 M.S.P.R. 361, 366 (M.S.P.B. Apr. 15, 1987). Here, Mr. Willis might be entitled to fees if he "produced evidence that was so compelling that reasonable minds could not differ as to his eligibility for an annuity and OPM's continued refusal to approve a disability retirement

---

[3] The parties do not dispute that Mr. Willis was the prevailing party. *See, e.g.*, Petitioner's Br. at 6 ("Mr. Willis then filed a timely motion for attorneys' fees as the prevailing part[y.]"); Respondent's Br. at 8 ("[A]s the prevailing party, Mr. Willis then moved for attorneys' fees and costs[.]").

annuity for the appellant prolonged the adjudication." *Id.* at 369.

On appeal, Mr. Willis argues that the MSPB's finding that OPM did not have evidence supporting equitable tolling prior to its denial of reconsideration in April 2019 is erroneous. Petitioner's Br. 12–13. In support, Mr. Willis points to language from the October 4, 2018 supplement to his request for reconsideration and his December 2017 and January 2018 submissions to OPM. *Id.* at 13–14. He argues that these correspondences prove he made multiple attempts to inform OPM that it misled him prior to its April 2019 reconsideration denial. We disagree. The question is not whether he informed OPM that it had misled him, but whether he provided conclusive evidence before the denial of reconsideration that he had been misled such that equitable tolling must apply. But the evidence shows that Mr. Willis did not inform OPM until his August 2019 affidavit. The AJ found that "the appellant's entire argument for equitable tolling rested upon the credibility of [the statement in his affidavit] – an issue which both parties agreed would be resolved through the hearing process." J.A. 6.

Mr. Willis further contends that it became clear during the hearing that he was entitled to the benefits and OPM needlessly prolonged the proceedings since his August 2019 affidavit and pre-hearing submissions clarified that the misleading call occurred in March 2009 and that he and his wife would testify to that timing. Petitioner's Br. at 18–19. According to Mr. Willis, the information should have made clear by August 2019 that OPM would not prevail at the hearing. *Id.*

We are not persuaded. As the MSPB noted, Mr. Willis's equitable tolling argument rested on the credibility of his and Mrs. Willis's hearing testimony. J.A. 6. The AJ himself "did not know ahead of time whether this testimony would be credible." J.A. 7. The MSPB ultimately

concluded that OPM, relying on the same record on which the AJ relied, "neither knew, nor could have known, how these questions of credibility would be resolved until the hearing ended." J.A. 7. Further, OPM "could not be expected to surmise from the record as it stood before the hearing that its position was clearly without merit, since that determination required weighing the credibility of testimony [OPM] had not yet heard." *Id.* As such, OPM was justified in thinking it had a meritorious position prior to the October 2019 hearing. *Id.* The MSPB's decision is therefore supported by substantial evidence.

Accordingly, we find no error in the MSPB's decision to deny an award of attorneys' fees and costs.

CONCLUSION

We conclude that the MSPB's decision to deny attorneys' fees and costs is supported by substantial evidence and is otherwise in accordance with law. We have considered the parties' remaining arguments and find them unpersuasive. Therefore, we affirm.

**AFFIRMED**