# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JAMES KELLEY,
        Appellant,

    v.

DEPARTMENT OF THE AIR FORCE,
        Agency.

DOCKET NUMBER
DC-0752-19-0340-I-1

DATE: May 9, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Shaun Yancey</u>, Esquire, Atlanta, Georgia, for the appellant.

<u>Christopher T. Dong</u>, Esquire, Joint Base Andrews, Maryland, for the agency.

<u>Kimberly Blanton-Day</u>, Esquire, Dallas, Texas, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his constructive removal appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant retired from uniformed service with the United States Air Force and, on September 4, 2007, the agency appointed him to the competitive service position of YA-02 Flight Management Specialist at Ramstein Air Force Base, Germany. Initial Appeal File (IAF), Tab 4 at 29, Tab 12 at 23-24. Continuous overseas service in that position was limited by Department of Defense policy to 5 years unless an extension was granted. IAF, Tab 13 at 10, 35. At the end of the 5 years, plus any extensions, the appellant would be offered assistance through the agency's priority placement program to secure a position in the continental United States. *Id*. Upon notification that his return was required, the appellant would need to register with the priority placement program. *Id*. at 35. He would be required to accept the return placement identified by the priority placement program or face separation. *Id*.

The appellant's tour of duty in Germany was originally set for 3 years, but, at the behest of his supervisors, his tour was extended multiple times. IAF, Tab 4 at 29-31, 67, 73, 77. On December 13, 2016, the appellant registered with the priority placement program in anticipation of his return to the continental United States. *Id*. at 68-70. On September 13, 2017, the appellant was offered priority placement as a GS-12 Flight Management Specialist at Scott Air Force Base in Illinois, and he was given until September 18, 2017, to accept or decline the offer. IAF, Tab 14 at 5-6. On September 14, 2017, the appellant indicated his acceptance. *Id*. at 5.

However, the appellant did not report to the new assignment because the agency extended his overseas tour until September 2018. IAF, Tab 4 at 6-7. At that point, the appellant's supervisors sought another extension of his return date to January 31, 2019, in order to ease the transition associated with multiple Flight Management Specialists who were rotating in and out of Ramstein Air Force Base

at the same time. *Id*. at 30-31, 56-57. The extension was granted, and the appellant accepted it. *Id*. at 32, 58.

On September 13, 2018, the Chief of Staffing at Ramstein Air Force Base requested that the appellant confirm that he was declining the Scott Air Force Base job offer in favor of the overseas extension. *Id*. at 53-54. The appellant replied that he had been removed from the priority placement program when the extension was granted. *Id*. at 53. On September 17, 2018, the Chief of Staffing notified the appellant that, after an employee declines a valid job offer, he must normally wait 12 months to reregister for priority placement, and that this would be beyond the January 31, 2019 extension. *Id*. at 49-51. The appellant again confirmed his acceptance of the extension. *Id*. at 49. On September 21, 2018, the Chief of Staffing confirmed with the appellant that he would be unable to reregister with priority placement prior to the end of his overseas tour and that he could be facing involuntary separation once the extension expired. *Id*. at 46-48. Although the Chief of Staffing urged the appellant to reconsider his decision, the appellant told her that he had already accepted the extension and that he would proceed with it. *Id*. at 32.

The agency proposed the appellant's removal for failure to accept return from an overseas area, and on December 19, 2018, it issued a decision to remove him effective January 31, 2019. IAF, Tab 1 at 21. After several unsuccessful attempts to alter the course of events, on January 31, 2019, the appellant submitted an application for immediate retirement. IAF, Tab 4 at 33-38, 41, Tab 15 at 7, 10-11. The agency separated him by retirement effective January 30, 2019.[2] IAF, Tab 15 at 12.

The appellant filed a Board appeal, alleging that his retirement constituted a constructive removal. IAF, Tab 1 at 6-19. He waived his right to a hearing. *Id*. at 2. The administrative judge issued an order informing the appellant of his

---

[2] It appears that the agency originally processed the removal effective January 31, 2019, but after receiving the appellant's retirement package, it cancelled the removal and replaced it with a retirement effective January 30, 2019. IAF, Tab 15 at 12, 14.

jurisdictional burden in a constructive removal appeal and ordering him to file evidence and argument on the issue. IAF, Tab 3. Both parties responded, focusing largely on whether the agency misled the appellant into accepting the extension of the overseas assignment. IAF, Tabs 4-5, 12-16. The agency also argued that the Board lacked jurisdiction over the appeal because the appellant was separated due to the expiration of his overseas appointment. IAF, Tab 12 at 16-18.

After the record on jurisdiction closed, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 20, Initial Decision (ID). He found that the Board lacks jurisdiction over the appellant's "separation at the end of his term appointment," and over the agency's decision regarding the appellant's registration in the priority placement program. ID at 6. He also found that the appellant was not misinformed regarding the consequences of accepting the extension of his overseas assignment and that his decision to retire rather than be removed was voluntary. ID at 6-9.

The appellant has filed a petition for review, disputing the administrative judge's voluntariness analysis. Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition, and the appellant has filed a reply to the agency's response. PFR File, Tabs 3-4.

## ANALYSIS

The Board lacks jurisdiction over the appellant's retirement as a constructive removal.

The Board generally lacks jurisdiction over voluntary employee actions such as resignations and retirements, but to the extent that such actions are involuntary, the Board may have jurisdiction over them under 5 U.S.C. chapter 75 as constructive adverse actions. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 7 (2013). Assuming that the jurisdictional requirements of 5 U.S.C. chapter 75 are otherwise met, an appellant may establish jurisdiction over a constructive

adverse action by showing that: (1) he lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived him of that choice.

In this case, the administrative judge found that the appellant's retirement was voluntary because the agency presented him choices regarding the path his civilian employment would take, as well as the consequences of each choice, and that the appellant's "ultimate choice to submit a retirement application was again a voluntary selection between alternatives limited by the consequences of his earlier decisions." ID at 7. This finding is aptly stated, and it is fully supported by the record. IAF, Tab 4 at 32, 46-54.

On petition for review, the appellant argues that, in August 2018, the Chief of Staffing misinformed him about the consequences of accepting an additional extension to his overseas tour, and that he relied on this misinformation when he accepted the extension on September 14, 2018. PFR File, Tab 1 at 9, 20-21. However, we find it immaterial whether the Chief of Staffing initially gave the appellant misleading information because she subsequently gave him accurate information about precisely what would happen, and what did in fact happen, if he were to accept the extension. IAF, Tab 4 at 32, 46-51. Specifically, she informed him that accepting the extension would mean declining the priority placement job offer and facing removal at the end of his extended tour, and she urged the appellant to reconsider his decision. *Id*. at 47, 50-51. The appellant, however, determined to stay the course based on his understanding of their earlier conversation in August. *Id*. at 32. An action is involuntary only if it resulted from the employee's *reasonable* reliance on the agency's misleading statements. *Smitka v. U.S. Postal Service*, 66 M.S.P.R. 680, 689 (1995), *aff'd*, 78 F.3d 605 (Fed. Cir. 1996) (Table). Even assuming that the appellant accepted the extension based on misleading information that he received in August 2018, we find that his continued reliance on that information was not reasonable after he received accurate information in September.

The appellant appears to argue that, by the time he received accurate information, it was too late because he had already accepted the extension. PFR File, Tab 1 at 21-22. However, the extension was not set to go into effect until after September 30, 2018, and, as previously indicated, the Chief of Staffing twice told the appellant that it was not too late for him to change his mind. IAF, Tab 4 at 47, 50, 59. The appellant states that the mission would have suffered if he did not accept the extension, and he seems to argue that the Air Force value of "service before self" prevented him from reneging on his earlier promise. PFR File, Tab 1 at 9, 20-21. However, we find that the appellant's internal values and motivations are not equivalent to an external force operating on his freedom of choice. *Cf. White v. Department of the Treasury*, 3 M.S.P.R. 488, 491 (1980) (finding that "the involuntary nature of a resignation arises from external coercion and duress"). We find that the appellant has not provided an adequate basis to disturb the administrative judge's findings on this issue, and that the Board lacks jurisdiction over the retirement as a constructive removal.

The agency did not separate the appellant due to the expiration of his appointment.

Termination of appointment based on the expiration date specified as a basic condition of employment at the time the appointment was made is not an adverse action appealable to the Board. *Endermuhle v. Department of the Treasury*, 89 M.S.P.R. 495, ¶ 9 (2001); 5 C.F.R. § 752.401(b)(11). The two cases most instructive on this issue under the facts of this appeal are *Edwards v. Department of the Air Force*, 120 M.S.P.R. 307 (2013), and *Scott v. Department of the Air Force*, 113 M.S.P.R. 434 (2010).

In *Scott*, the agency appointed the appellant to an overseas position with a "prescribed tour of duty" of 3 years, after which he would be eligible for return travel "for purpose of separation from the service." *Scott*, 113 M.S.P.R. 434, ¶ 6. Prior to his appointment, the appellant agreed that he lacked return rights to a position in the continental United States, and that he would need to register under

the agency's priority placement program in order to secure such a position. *Id*. After the appellant's 3-year term expired, the agency removed him based on the expiration of his tour and his inability to register for priority placement due to his performance rating. *Id*., ¶ 7. On appeal, the Board acknowledged that the Standard Form 50 (SF-50) documenting the appellant's appointment indicated that he was a career-conditional employee, but it found that the SF-50 was not controlling and that the Board would consider the totality of the circumstances to determine the nature of the appointment. *Id*., ¶ 8. The Board concluded that, despite any contrary indication in the SF-50, the appellant's specific employment agreements showed that he was appointed to a 3-year term and that he was separated at the expiration of that term. *Id*. Accordingly, the Board found that the appellant was removed due to the expiration of his term appointment, and it dismissed the appeal for lack of jurisdiction. *Id*., ¶¶ 8, 11.

The appellant in *Edwards* was also serving in a time-limited overseas assignment when the agency removed him upon its expiration. *Edwards*, 120 M.S.P.R. 307, ¶ 2. However, the Board found that the appellant made a nonfrivolous allegation of Board jurisdiction because there was evidence in the record that was inconsistent with the agency's argument that the appellant encumbered a term position. *Id*., ¶¶ 9-11. Not only did the SF-50 reflect that the appointment was career-conditional, but, unlike the employment agreement in *Scott*, the employment agreement in *Edwards* did not specify that the appellant could be separated from service upon the expiration of his overseas term. *Id*., ¶ 9. The employment agreement was also limited to career and career-conditional employees. *Id*. Furthermore, the record suggested that the appellant was not a temporary, term, or limited overseas appointee because he was eligible to register for a priority placement program that generally excludes such employees. *Id*. Moreover, the total duration of the appellant's appointment (4 years) was inconsistent with him being under a temporary or term appointment. *Id*.

Considering the totality of the circumstances in the instant appeal, we find that nothing in the record supports the agency's contention that the appellant was separated upon the expiration of his appointment. Quite the contrary, the SF-50 documenting the appellant's appointment shows that it was a competitive service "career appointment." IAF, Tab 12 at 23. In addition, the public law cited therein as the appointing authority is consistent with career status; it amended 5 U.S.C. § 3304(f) to provide that a veteran appointed under that paragraph "shall receive a career or career-conditional appointment as appropriate." Veterans Millennium Healthcare and Benefits Act, Pub. L. No. 106-117, § 511, 113 Stat. 1545, 1575 (1999). The hallmark of a career appointment is that it is nontemporary, as distinguished from temporary, term, and indefinite appointments. *See* 5 C.F.R. §§ 301.203, 315.201(a), 316.301, 316.401. It is true that the appellant's overseas assignment was of limited duration. IAF, Tab 13 at 35. However, time limits on an assignment are not the same as time limits on an appointment, *see Edwards*, 120 M.S.P.R. 307, ¶ 10, and both the appellant's Overseas Employment Agreement and the agency guidance make clear that the relevant limitation is on the length of time the incumbent is authorized to remain in a foreign area, not on the duration of his employment, IAF, Tab 13 at 10, 35. Unlike the employment agreement at issue in *Scott*, nothing in the employment agreement here states that the appellant might be separated upon the expiration of his overseas assignment.[3] *Id*. at 35. We also find that the 11-year duration of the appellant's employment is inconsistent with his being appointed to a temporary or term position, which appointments are generally limited to 2 and 4 years respectively.[4] *See* 5 C.F.R. §§ 316.301(a), .401(c). Although overseas limited

---

[3] The appellant's employment agreement did, however, inform him that he could be separated if he failed to request and accept a return assignment. IAF, Tab 13 at 35.

[4] Although temporary and term appointments may be extended, the extension of a term appointment beyond 4 years requires Office of Personnel Management approval, which does not appear to have occurred here, and extensions of temporary appointments beyond 2 years are limited to positions involving temporary and seasonal work. *See* 5 C.F.R. §§ 316.301(b), .401(c)-(d).

appointments are generally of "indefinite duration," the agency does not allege, nor does anything in the record suggest, that the appellant received a limited overseas appointment. *See* 5 C.F.R. § 301.203(a).

The circumstances surrounding the removal action are also consistent with our finding. Specifically, the appellant was not removed based on the expiration of his appointment, but rather for failure to accept return from an overseas area. IAF, Tab 1 at 21; *cf. Edwards*, 120 M.S.P.R. 307, ¶¶ 2, 9 (reflecting that the appellant was not removed for failure to accept a return assignment); *Scott*, 113 M.S.P.R. 434, ¶ 7 (reflecting that the appellant was removed pursuant to the expiration of his tour of duty). In addition, the coding on the SF-50 is consistent with a chapter 75 removal for postappointment conduct or performance, and not with a separation pursuant to the expiration of an appointment. IAF, Tab 15 at 14; *see* Office of Personnel Management, Guide to Processing Personnel Actions, Ch. 31, Table 31-B, Rules 14, 35 (2017), https://opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/gppa31.pdf (last visited May 8, 2024). Putting aside the fact that the appellant ultimately separated by retirement in lieu of removal, for the reasons explained above, we find that the removal action was not, nor could it have been, based on the expiration of his appointment.

The Board may have jurisdiction over the agency's removal decision under
5 U.S.C. chapter 75.

In determining the appealability of a removal, an individual's retirement status may not be taken into account. 5 U.S.C. § 7701(j). The Board retains jurisdiction over an appeal in which an employee retires when faced with an agency's final decision to remove him. *Mays v. Department of Transportation*, 27 F.3d 1577, 1579-80 (Fed. Cir. 1994); *Cunningham v. Department of Veterans Affairs*, 86 M.S.P.R. 519, ¶ 4 (2000). This seems to be exactly what happened in

this case.[5]  IAF, Tab 1 at 21, Tab 15 at 12, 14.  It therefore appears that the Board may have jurisdiction to adjudicate the removal action under 5 U.S.C. chapter 75.

## ORDER

For the reasons discussed above, we REMAND this case to the regional office for further adjudication.  In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order. If the administrative judge finds that the Board has jurisdiction over the removal action, he shall adjudicate the removal on the merits.

*Gina K. Grippando*

FOR THE BOARD:          _____
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.

---

[5] In *Jenkins v. Merit Systems Protection Board*, 911 F.3d 1370 (Fed. Cir. 2019), and *Cooper v. Department of the Navy*, 108 F.3d 324 (Fed. Cir. 1997), the U.S. Court of Appeals for the Federal Circuit found that the Board lacked jurisdiction over removal actions which had been completely rescinded pursuant to the appellants' retirements. Although the agency in this case cancelled the removal action to allow the appellant to separate by retirement, it does not appear to have rescinded the removal decision or expunged all references to the action from the appellant's official personnel file.  *Cf. Jenkins*, 911 F.3d at 1374; *Cooper*, 108 F.3d at 326.